# CHICAGO RAILWAY EQUIPMENT COMPANY *v.* MERCHANTS' BANK.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF WISCONSIN.

No. 64. Argued November 4, 5, 1889. — Decided May 19, 1890.

The maker executed in the State of Illinois and delivered to the promisee a series of notes, one of which was acquired by a *bona fide* endorsee, and was as follows: " $5000.     Chicago, Ill., January 20, A.D. 1884.     For value received, four months after date, the Chicago Railway Equipment Company promise to pay to the order of the Northwestern Manufacturing and Car Company of Stillwater, Minnesota, five thousand dollars, at First Nat. Bank of Chicago, Illinois, with interest thereon, at the rate of — per cent per annum, from date until paid.     This note is one of a series of twenty-five notes, of even date herewith, of the sum of five thousand dollars each, and shall become due and payable to the holder on the failure of the maker to pay the principal and interest of any one of the notes of said series, and all of said notes are given for the purchase price of two hundred and fifty railway freight cars manufactured by the payee hereof and sold by said payee to the maker hereof, which cars are numbered from 13,000 to 13,249, inclusive, and marked on the side thereof with the words and letters Blue Line C. & E. I. R. R. Co.; and it is agreed by the maker hereof that the title to said cars shall remain in the said payee until all the notes of said series, both principal and interest, are fully paid, all of said notes being equally and ratably secured on said cars.     No. 1. Geo. B. Burrows, Vice-President.     Countersigned by E. D. Buffington, Treas."; *Held:*

(1) That this was a negotiable promissory note according to the statute of Illinois, where it was made, as well as by the general mercantile law;

(2) That its negotiability was not affected by the fact that the title to the cars for which it was given remained in the vendor until all the notes of the same series were fully paid, the title being so

retained only by way of security for the payment of the notes, and the agreement for the retention for that purpose being a short form of chattel-mortgage;

(3) That its negotiability was not affected by the fact that it might, at the option of the holder, and by reason of the default of the maker, become due at a date earlier than that fixed.

Mr. Justice Harlan, in the opinion of the court, stated the case as follows:

This action was brought by the Merchants' National Bank of Chicago against the Chicago Railway Equipment Company, a corporation of Wisconsin, upon two written instruments, one of which is in the words and figures following:

"$5,000.  Chicago, Ill., *January* 20, a.d. 1884.

"For value received, four months after date, the Chicago Railway Equipment Company promise to pay to the order of the Northwestern Manufacturing and Car Company of Stillwater, Minnesota, five thousand dollars at First National Bank of Chicago, Illinois, with interest thereon at the rate of — per cent per annum from date until paid.

"This note is one of a series of twenty-five notes, of even date herewith, of the sum of five thousand dollars each, and shall become due and payable to the holder on the failure of the maker to pay the principal and interest of any one of the notes of said series, and all of said notes are given for the purchase-price of two hundred and fifty railway freight cars manufactured by the payee hereof and sold by said payee to the maker hereof, which cars are numbered from 13,000 to 13,249 inclusive, and marked on the side thereof with the words and letters Blue Line C. & E. I. R. R. Co.; and it is agreed by the maker hereof that the title to said cars shall remain in the said payee until all the notes of said series, both principal and interest, are fully paid, all of said notes being equally and ratably secured on said cars.

"No. 1.  Geo. B. Burrows, *Vice-President.*"

"Countersigned by E. D. Buffington, Treasurer."

This writing is endorsed: "Northwestern Manufacturing and Car Co., per J. C. Gorman, Treas."

The other instrument bears the same date, and is in all respects similar to the first one. No question is made as to the genuineness of the signatures to these instruments of the vice-president and treasurer of the defendant, nor as to the plaintiff having paid value for them before maturity. They were declared upon as negotiable promissory notes. In support of the defence certain evidence was offered that was excluded, and the jury pursuant to the direction of the court returned a verdict in favor of the plaintiff for the full amount of the two instruments. 25 Fed. Rep. 809.

*Mr. Greenleaf Clark* for plaintiff in error.

The issue is a simple one, the defendant in error claiming that they are negotiable promissory notes, the plaintiff in error that they are not.

The requisites of a negotiable promissory note are few and simple. There must be an absolute unconditional promise in writing to pay a specified sum at a definite time therein limited. *Nunez* v. *Dautel*, 19 Wall. 560; *Cayuga Co. Bank* v. *Purdy*, 56 Michigan, 6.

The time of payment of each of the instruments is by the terms thereof so indefinite, uncertain and contingent, as to destroy the negotiable character that might otherwise attach thereto.

Each of the instruments in question is an entirety, and to ascertain its character and what is represented by it, resort must be had to all the terms and conditions therein contained, — the promise to pay a certain sum four months after date is in each instance to be taken in connection with and as modified and changed by what follows. The promise to pay, in four months from date, is subject at all times to the contingency that no default occurs as to either of the other twenty-four notes of the series, the terms and conditions of which do not appear from the instrument in question.

The first case in which the principle that the time of payment should be definite and ascertainable from the instrument itself was *Andrews* v. *Franklin*, (1717,) 1 Strange, 24. This

was followed by *Evans* v. *Underwood*, 1 Wilson, 262. These cases would not now be considered law. *Weidler* v. *Kauffman*, 14 Ohio, 455, 460.

*Colehan* v. *Cook*, (1743,) Willes, 393, followed these cases. On the authority of *Andrews* v. *Franklin*, it was there held that a note payable ten days after the death of the maker's father was negotiable. The authority of this case is seriously impeached, if not overthrown, by *Alexander* v. *Thomas*, 16 Q. B. 333.

It obtained, however, a foothold in this country through *Cota* v. *Buck*, 7 Met. 588, which has been since overruled. See *Way* v. *Smith*, 111 Mass. 523; *Stultz* v. *Silva*, 119 Mass. 137; *Mahoney* v. *Fitzpatrick*, 133 Mass. 151. Some of the cases in which it was followed were *Ernst* v. *Steckman*, 74 Penn. St. 13; and *Walker* v. *Woollen*, 54 Indiana, 164. See *Charlton* v. *Reed*, 61 Iowa, 166; *Cisne* v. *Chidester*, 85 Illinois, 523.

Another class of cases which will doubtless be urged as holding a doctrine adverse to that we here contend for, is those holding notes payable "on or before" a day named to be negotiable. To this class belong *Jordan* v. *Tate*, 19 Ohio St. 586; *Mattison* v. *Marks*, 31 Michigan, 421.

There is also a series of decisions with reference to notes payable in instalments, with a proviso that the entire amount shall become due on failure to pay any one. The leading case is *Oridge* v. *Sherborne*, 11 M. & W. 374. It was followed by *Carlon* v. *Kenealy*, 12 M. & W. 139, in which the court held itself bound by *Oridge* v. *Sherborne*. If *Carlon* v. *Kenealy* shall be considered to rest alone on the authority of *Oridge* v. *Sherborne*, it can have but little weight; if it be considered as standing alone its weight as an authority of principle is materially lessened by Pollock, C. B., in *Miller* v. *Biddle*, in 1865, an action upon a note like the one in question in *Carlon* v. *Kenealy*.

Opposed to the theory, however, that instruments promising to pay a definite sum of money at a specified time when coupled with an agreement that they may or shall become due upon the happening of some uncertain event before the

date mentioned are negotiable, are many well considered authorities, all of which enunciate the principle that such additional agreement operates to make the time when payment will become due so indefinite and uncertain as to nullify the otherwise negotiable character of the paper, reducing it to a mere chose in action assignable only subject to equities between the original parties.

*Hubbard* v. *Mosely,* 11 Gray, 170; *Way* v. *Smith,* 111 Mass. 523; *Stultz* v. *Silva,* 119 Mass. 137; *Mahoney* v. *Fitzpatrick,* 133 Mass. 151; *Brooks* v. *Hargreaves,* 21 Michigan, 254; *First National Bank* v. *Carson,* 60 Michigan, 432; *Bank of New Windsor* v. *Bynum,* 84 No. Car. 24; *Chouteau* v. *Allen,* 70 Missouri, 290, 339. See also, having bearing on the subject: *Lamb* v. *Story,* 45 Michigan, 488; *Smith* v. *Van Blarcom,* 45 Michigan, 371; *Nunez* v. *Dautel,* 19 Wall. 561; *Smith* v. *Marland,* 59 Iowa, 645; *Cayuga Co. Bank* v. *Purdy,* 56 Michigan, 6.

The instruments in question were not negotiable promissory notes, but merely executory agreements evidencing the terms and conditions of a conditional sale of personal property, as such assignable, but not negotiable in the commercial sense.

It is a cardinal principle in the law of negotiable paper needing no authorities in its support that bills and notes must be for the payment of money absolutely at the time specified, and with nothing upon the face of the paper that expressly or by implication will alter or modify this absolute obligation; and if the instrument, though otherwise a good promissory note or bill of exchange, does contain any such matter, the additional provisions will destroy the negotiable character that might otherwise attach to the instrument and reduce it to the level of an ordinary agreement.

So, too, if a note contains any stipulation or provision creating any obligation, duty or right on the part of either party aside from the simple obligation to pay a fixed sum at a certain time on the one part, and the right to receive it on the other, its negotiability will be thereby destroyed; and its character changed from that of a note to a mere agreement.

Parsons Bills and Notes, 30; Chitty on Bills, 12 Am. ed. 134 *et seq.* ; Story on Bills, §§ 4-47.

The statute of Illinois does not change the ordinary rules further than to allow a note to be payable in personal property as well as money.

These cardinal principles are undisputed, and the only difficulty that has ever arisen has been in their application.

That instruments of the character of those in question here evidence a conditional sale by which no title passes until conditions are performed rather than an absolute sale with mortgage back for the purchase price, was held by this court in the recent case of *Harkness* v. *Russell*, 118 U. S. 663, where in an exhaustive decision considering an instrument very similar in its provisions to those in question in the present case, it reviews nearly all the authorities in this country on the subject.

While in that case, as well as many others where this class of papers has come up, the question was as to the title to the property acquired by the maker of the instrument, and the holding that, prior to compliance with the conditions, he had none whatever, regardless of where the possession might be, it follows as a logical sequence that his final obligation to pay must be dependent upon his getting what forms the consideration for the promise, otherwise there is an absolute want or failure of consideration. Until the executory agreement is performed, and the conditions fulfilled or waived, there is a contingency, it may be more or less remote, that the property may be destroyed or the vendor incapacitated from performance when the time for performance arrives. The obligation to pay is affected by this contingency from the time the agreement is made, and is not changed by its subsequent transfer. See *Third ·Nat. Bank* v. *Armstrong*, 25 Minnesota, 530; *Sloan* v. *McCarty*, 134 Mass. 245; *Swallow* v. *Emery*, 111 Mass. 355; *Killam* v. *Schaeps*, 26 Kansas, 310; *South Bend Iron Works* v. *Paddock*, 37 Kansas, 510; *Stevens* v. *Johnson*, 28 Minnesota, 172; *Deering* v. *Thom*, 29 Minnesota, 120; *Fletcher* v. *Thompson*, 55 N. H. 308; *Bannister* v. *Rouse*, 44 Michigan, 428.

Apparently opposed to this application of the rule is *Mott* v. *Havana Bank*, 22 Hun, 354; *Heard* v. *Dubuque County Bank*, 8 Nebraska, 10; and *Newton Wagon Co.* v. *Diers*, 10 Nebraska, 284.

Had the transaction been in the nature of sale absolute, with mortgage back to secure deferred payments, the instruments might be said to come within the authorities holding that the negotiable character of promissory notes is not to be affected by an agreement that is "merely collateral to the promise to pay. But here the parties have by the express terms of their agreement evidenced a positive intention that the title should not pass until all the conditions of payment were fully complied with, and there is nothing in the instruments that will operate to modify or change this positive intention so expressed. See *Call* v. *Seymour*, 40 Ohio St. 670; *Fosdick* v. *Schall*, 99 U. S. 235; *Harkness* v. *Russell*, 118 U. S. 663, and cases cited; *Dom. Sewing Mach. Co.* v. *Arthurhultz*, 63 Indiana, 322; *Cole* v. *Mann*, 62 N. Y. 1.

The vendor, who seeks to protect himself may do this either by a conditional sale retaining the ownership with or without the possession until all the conditions are complied with and full payment made, or by an absolute sale and transfer of the title with a mortgage back; and no matter what the form of the instrument the question is one of intention, as evidenced by the instrument itself. *Hervey* v. *Rhode Island Locomotive Works*, 93 U. S. 664; *Murch* v. *Wright*, 46 Illinois, 487; *Fosdick* v. *Schall*, 99 U. S. 235; *Call* v. *Seymour*, 40 Ohio St. 670; *Harkness* v. *Russell*, 118 U. S. 663.

As this is not a question between claimants of the property sold, the chattel mortgage act of Illinois cannot affect the matter one way or the other.

The Illinois statute on negotiable instruments does not interfere with either of the positions here taken.

In several cases determined by the Supreme Court of that State, it has been held that to come within the operation of the statute the promise must be an absolute and unconditional one. See *Husband* v. *Epling*, 81 Illinois, 172; *Turner* v. *Peoria &c. Railroad*, 95 Illinois, 134; *Canadian Bank* v. *McCrea*, 106 Illinois, 281.

*Mr. John P. Wilson* for defendant in error.

*Mr. Charles Noble Gregory* and *Mr. J. C. Gregory* filed a brief for defendant in error.

MR. JUSTICE HARLAN, after stating the case in the opinion of the court as above reported, continued:

Are the writings in suit to be regarded as promissory notes to be protected, in the hands of *bona fide* holders for value, according to the rules of general mercantile law as applicable to negotiable instruments, or are they anything more than simple contracts subject, in the hands of transferees, to such equities and defences as would be available between the original parties? This is the question upon which, it is conceded, depends the correctness of the several rulings to which the assignments of error refer.

By the statute of Illinois revising the law in relation to promissory notes, bonds, due bills and other instruments in writing, approved March 18, 1874, and in force July 1, 1874, (Rev. Stats. Illinois 1874, p. 718; 2 Starr & Curtis' Anno. Stat. 1651, c. 98; Rev. Stats. 1845, p. 384,) it is provided:

" SEC. 3. All promissory notes, bonds, due bills and other instruments in writing, made or to be made, by any person, body politic or corporate, whereby such person promises or agrees to pay any sum of money or articles of personal property, or any sum of money in personal property, or acknowledges any sum of money or article of personal property to be due to any other person, shall be taken to be due and payable, and the sum of money or article of personal property therein mentioned shall, by virtue thereof, be due and payable as therein expressed.

" SEC. 4. Any such note, bond, bill or other instrument in writing, made payable to any person named as payee therein, shall be assignable, by endorsement thereon, under the hand of such person, and of his assignees, in the same manner as bills of exchange are, so as absolutely to transfer and vest the property thereof in each and every assignee successively."

Other sections of the statute throw some light on the ques-

tion before us. The fifth section provides that any assignee to whom such sum of money or personal property is by endorsement made payable, or, he being dead, his executor or administrator, may, in his own name, institute and maintain the same kind of action for the recovery thereof against the person making and executing the note, bond, bill or other instrument in writing, or against his heirs, executors or administrators, as might have been maintained against him by the obligee or payee, in case it had not been assigned. By the sixth section no maker of, or other person liable on, such note, bond, bill or other instrument in writing, is allowed to allege payment to the payee, made after notice of assignment, as a defence against the assignee. The eighth section provides: "Any note, bond, bill, or other instrument in writing, made payable to bearer, may be transferred by delivery thereof, and an action may be maintained thereon in the name of the holder thereof. Every endorser of any instrument mentioned in this section shall be held as a guarantor of payment unless otherwise expressed in the endorsement." The ninth section allows the defendant, when sued upon a note, bond or other instrument in writing, for the payment of money or property, or the performance of covenants or conditions, to prove the want or failure of consideration, "provided that nothing in this section contained shall be construed to affect or impair the right of any *bona fide* assignee of any instrument made assignable by this act, when such assignment was made before such instrument became due." The eleventh section provides that "if any such note, bond, bill or other instrument in writing, shall be endorsed after the same becomes due, and any endorsee shall institute an action thereon against the maker of the same, the defendant, being maker, shall be allowed to set up the same defence that he might have done had the action been instituted in the name and for the use of the person to whom such instrument was originally made payable, or any intermediate holder." Under the twelfth section, if the instrument has been assigned or transferred by delivery to the plaintiff after it became due, "a set-off to the amount of the plaintiff's debt may be made of a demand existing against any

person or persons who shall have assigned or transferred such instrument after it became due, if the demand be such as might have been set off against the assignor, while the note or bill belonged to him." If the instrument is assigned before the day the money or property therein mentioned becomes due and payable, then, by the thirteenth section, the defendant, in an action brought by the assignee, is allowed to give in evidence at the trial any money or property actually paid on the note, bond, or bill or other instrument in writing, before it was assigned to the plaintiff, on proving that the plaintiff had "sufficient notice of the said payment before he accepted or received such assignment."

It is contended by the defendant that these statutory provisions, so far as they embrace instruments not negotiable at common law, relate only to the manner of their endorsement or transfer, and that the endorsee takes them, as before the statute, subject to all the defences that might be interposed in an action between the original parties. This view is inconsistent with the decisions of the Supreme Court of Illinois. Some of these decisions will be referred to as indicating the scope and effect of the local statute, as well as the views of that court upon the general principles of commercial law involved in this case.

In *Stewart* v. *Smith*, 28 Illinois, 397, 406, 408, the principal question was as to the negotiability under the above statute of the following instrument: "Chicago, 21st of January, 1859. Received from teams in our pork-house, No. 114 West Harrison Street, 280 hogs, weighing 45,545 pounds, the product of which we promise to deliver to the order of Messrs. Stevens & Brother endorsed hereon. G. & J. Stewart." The court said: "Testing the writing by this statute, there cannot be a doubt upon its assignability. It is an instrument in writing; it purports to be made by persons; by it, those persons promise and agree to deliver a certain article of personal property, to the order of certain other persons. By force of the statute, this article of personal property mentioned in the instrument of writing so made, by virtue of its being so mentioned and in such form of words, must be

taken to be due and payable to the person to whom the instrument in writing is made. The statute does not require. that the note or instrument in writing shall be payable at any particular time or place, or be expressed to be for value received, or that any consideration whatever should appear in the writing — an acknowledgment of indebtedness, in the simplest form, would seem to be all the statute requires to give it the character of negotiability. A writing in this form, probably the simplest, would be a perfect negotiable note under this statute: Due John Brown, ten dollars, July 4, 1862, and signed by the maker. Such an instrument is clothed with all the attributes of negotiability, and imports a consideration, and no averments or proofs are necessary on those points. . . . The other point made by plaintiffs, that the instrument was overdue on the 26th of January, 1859, when it was endorsed, to such an extent as to put a prudent man upon inquiry in respect to all equities which the makers might have against it in the hands of the promisee, we do not consider a strong one. : . . The endorsement being in season cut off all equities, if there were any, in defendant's favor, and the only hazard incurred in holding it back for payment, was that the release of the endorsers might have been caused by it, but not the release of the maker."

In *Cisne* v. *Chidester*, 85 Illinois, 524, the action was upon the following note: " $120. May 2, 1871. On the first day of September, 1871 (or before, if made out of the sale of J. B. Drake's horse hay fork and hay carrier), I promise to pay James B. Drake, or to order, one hundred and twenty dollars, for value received, with use." On this note was an endorsement by Drake to Chamberlain, and by the latter to Chidester. The trial court instructed the jury that, in the hands of an assignee before maturity, the question of consideration did not arise until it was shown by evidence that the assignee purchased the note with actual knowledge of the want of consideration; and, also, that the note was, in its effect, payable absolutely on the 1st day of September, 1871, with interest at six per cent from date. The Supreme Court of Illinois said: "The pleas were, the general issue, and fraud and circumven-

tion in obtaining the making of the note. There was no evidence whatever as to the time of the endorsement of the note, or of any want of good faith in or notice to the endorsee in respect to the consideration of the note, or the circumstances under which it was given, more than appears upon the face of the note itself. The plaintiff was presumed to be a *bona fide* endorsee of the note for a valuable consideration. As against the plaintiff, there was, under the evidence, no question of consideration before the jury, and the giving of the first instruction could form no just cause of complaint. The construction of the note was a question of law and for the court. The proper construction was put upon the note."

In *White* v. *Smith,* 77 Illinois, 351, 352, the principle was said to be undoubted, that to constitute a valid promissory note it must be for the payment of money, which will certainly become due and payable one time or another, though it may be uncertain when that time will come. In *Canadian Bank* v. *McCrea,* 106 Illinois, 281, 289, 292, the court, construing the local statute, said that it did not embrace "covenants or agreements for the performance of individual services in and about property — mutual, dependent and conditional covenants and agreements, or covenants and agreements to pay money or deliver property upon uncertain contingencies or events " — but applied "only to absolute and unconditional promises to pay money or deliver property." It was further said to be clear, under previous cases, that "the promise or undertaking must be restricted to the payment of money or delivery of property at a time that will certainly happen." "It may be," the court added, "unknown, in advance, when it will be, but it must be absolutely certain that it will be at some time; and although it may be within the power of the party to whom the promise is made to render it certain, by his subsequent act, that the time will happen, this will not be sufficient — it cannot depend upon his will or pleasure." See also *Harlow* v. *Boswell,* 15 Illinois, 56; *McCarty* v. *Howell,* 24 Illinois, 341; *Bilderback* v. *Burlingame,* 27 Illinois, 338; *Houghton* v. *Francis,* 29 Illinois, 244; *Baird* v. *Underwood,* 74 Illinois, 176.

It is clear from these cases that the statute of Illinois has a much wider scope than the counsel for the defendant supposes. It evidently intended to place negotiable promissory notes in the hands of *bona fide* holders for value on the same footing substantially, that they occupy under the general rules of the mercantile law. It does not, in our judgment, do anything more. So that we are to inquire whether the notes in suit are not negotiable securities according to the custom and usages of merchants.

The defendant insists, that, in view of the agreement for the retention by the payee of the title to the cars until all the notes of the same series, principal and interest, are fully paid, the transaction was only a conditional sale of the cars. It is contended that the promise to pay the notes given for the price, so far from being absolute as required by the mercantile law, is subject to the condition, running with the notes, that the title to the cars should not pass until all the notes were paid, which could not occur if, before payment, the cars had been destroyed or sold to other parties. The fact that, by agreement, the title is to remain in the vendor of personal property until the notes for the price are paid, does not necessarily import that the transaction was a conditional sale. Each case must depend upon its special circumstances. In *Heryford v. Davis*, 102 U. S. 235, 243, 244, 245, 246, the question was as to whether a certain instrument, relating to cars supplied to a railway company, and for the price of which the latter gave its notes, showed a conditional sale, which did not pass the ownership until the conditions were performed, or whether, taking the whole instrument together, the seller reserved only a lien or security for the payment of the price, or what is sometimes called a mortgage back to the vendor. In that case, the instrument construed provided that until a certain payment was made, the railway company should have no right, title, claim, or interest in the cars delivered to it, "except as to their use or hire," or any right or authority in any way to dispose of, hire, sell, mortgage, or pledge the same, but that they "are and shall remain the property" of the manufacturing company, and be redelivered to it when de-

manded, upon default in the above payment.   This court, after observing that the true construction of the contract was not to be found in any name which the parties may have given to the instrument, nor alone in any particular provisions it contained, disconnected from all others, but in the ruling intention of the parties, gathered from all the language used, said : " It is the legal effect of the whole which is to be sought for.   The form of the instrument is of little account.   Though the contract industriously and repeatedly spoke of loaning the cars to the railroad company *for hire*, for four months, and delivering them for use *for hire*, it is manifest that no mere bailment for hire was intended.   No price for the hire was mentioned or alluded to, and in every bailment or letting for hire a price or compensation for the hire is essential. . . . It is quite unmeaning for parties to a contract to say it shall not amount to a sale, when it contains every element of a sale, and transmission of ownership.   This part of the contract is to be construed in connection with the other provisions, so that if possible, or so far as is possible, they may all harmonize.   Thus construed, it is quite plain these stipulations were inserted to enable the manufacturing company to enforce payment, not of any rent or hire, but of the selling price of the cars for which the company took the notes of the railroad company.   They were intended as additional security for the payment of the debt the latter company assumed.   This is shown most clearly by the other provisions of the contract.   The notes became the absolute property of the vendors.   As has been stated, they all fell due within four months, and it was expected they would be paid.   The vendors were expressly allowed to collect them at their maturity, and it was agreed that whatever sums should be collected on account of them should be retained by the vendors for their own use.   No part of the money was to return to the railroad company in any event, not even if the cars should be returned. . . .   What was this but treating the notes given for the sum agreed to be the price of the cars as a debt absolutely due to the vendors ?   What was it but treating the cars as a security for the debt ? . . .   In view of

.these provisions, we can come to no other conclusion than that it was the intention of the parties, manifested by the agreement, the ownership of the cars should pass at-once to the railroad company in consideration of .their becoming debtors for .the price.   Notwithstanding the efforts to cover up the real nature of the contract, its substance was an hypothecation of the cars to secure a debt due to the vendors for the price of a sale.   The railroad company was not accorded an option to buy or not.   They were bound to pay the price, either by paying their notes or surrendering the property to be sold in order to make payment.   This was in no sense a conditional sale.   This giving property as security for the payment of a debt is the very essence of a mortgage, which has no existence in a case of conditional sale."

It is a mistake to suppose that there is any conflict between these views and those expressed in the subsequent case of *Harkness* v. *Russell*, 118 U. S. 663, 680, where the whole doctrine of conditional sales of personal property was carefully examined, and in which the particular instrument there in question was held to import not an absolute sale but only an agreement to sell upon condition that the purchasers should pay their notes at maturity.   With the principles laid down in the latter case we are entirely satisfied.   But as pointed out in *Arkansas Cattle Co.* v. *Mann*, 130 U. S. 69, 77, 78, the agreement in *Harkness* v. *Russell* was upon the express condition that neither the title, ownership, nor possession of the engine and saw-mill which was the subject of the transaction should pass from the vendor until the note given by the vendee for the stipulated price was paid.   Turning to the notes here in suit, we find every element of a sale and transmission of ownership, despite the provision that the title to the cars should remain in the payee, until all the notes of the series were fully paid.   The notes, upon their face, show they were given for the "purchase price" of cars "sold" by the payee to the maker and they are "secured" equally and ratably on the cars, in order to prevent the holder of one of the notes from obtaining out of the common security a preference over holders of others of the same series.   This provision placed the parties

upon the same footing they would have occupied if a chattel mortgage, covering all the notes, had been executed by the purchaser of the cars. If the notes had been in the usual form of promissory notes, and the maker had given a mortgage back to the payee, the title would, technically, have been in the payee until they were paid. But they would, in such case, have been negotiable securities protected in the hands of *bona fide* holders for value against secret defences, and their immunity from such defences would have been communicated to the mortgage itself. In *Kenicott* v. *Supervisors*, 16 Wall. 452, 469, it was said that where a note secured by a mortgage is transferred to a *bona fide* holder for value before maturity, and a bill is filed to foreclose the mortgage, no other or further defences are allowed against the mortgage than would be allowed were the action brought in a court of law upon the note. To the same effect are *Carpenter* v. *Longan*, 16 Wall. 271, 274. See also *Swift* v. *Smith*, 102 U. S. 442, 444; *Collins* v. *Bradbury*, 64 Maine, 37; *Towne* v. *Rice*, 122 Mass. 67, 73.

The agreement that the title should remain in the payee until the notes were paid — it being expressly stated that they were given for the price of the cars sold by the payee to the maker, and were secured equally and ratably on the property — is a short form of chattel mortgage. The transaction is, in legal effect, what it would have been if the maker, who purchased the cars, had given a mortgage back to the payee, securing the notes on the property until they were all fully paid. The agreement, by which the vendor retains the title and by which the notes are secured on the cars, is collateral to the notes, and does not affect their negotiability. It does not qualify the promise to pay at the time fixed, any more than would be done by an agreement, of the same kind, embodied in a separate instrument, in the form of a mortgage. So far as the notes upon their face show, the payee did not retain possession of the cars, but possession was delivered to the maker. The marks on the cars showed that they were to go into the possession of the maker, or of its transferee, to be used. The suggestion that the maker could not have been compelled to pay if the cars had been destroyed before the maturity of the notes, is

without any foundation upon which to rest. The agreement cannot properly be so construed. The cars having been sold and delivered to the maker, the payee had no interest remaining in them except by way of security for the payment of the notes given for the price. The reservation of the title as security for such payment was not the reservation of anything in favor of the maker, but was for the benefit of the payee and all subsequent holders of the paper. The promise of the maker was unconditional.

Without deciding whether the notes here in suit would or would not have been negotiable securities if the transaction between the parties had been a conditional sale, we are of opinion that they are of the class of instruments that are negotiable according to the mercantile law, and which, in the hands of a *bona fide* holder for value, are protected against defences of which the maker might avail himself if sued by the payee. They are promises in writing to pay a fixed sum of money to a named person or order, at all events, and at a time which must certainly arrive. *Ackley School District* v. *Hall*, 113 U. S. 135, 139, 140; Story on Promissory Notes, § 27; *Cota* v. *Buck*, 7 Met. 588. It is true that, upon the failure of the maker to pay the principal and interest of any note of the whole series of twenty-five, the others would become due and payable; that is, due and payable at the option of the holder. But a contingency under which a note may become due earlier than the date fixed is not one that affects its negotiability. In *Ernst* v. *Steckman*, 74 Penn. St. 13, 15, cited with approval in *Cisne* v. *Chidester*, 85 Illinois, 525, the question was whether the following instrument was a negotiable promissory note: "$375. Paradise, Lancaster Co., Pa., June 11, 1869. Twelve months after date, (or before if made out of the sale of W. S. Coffman's Improved Broadcast Seeding Machine,) I promise to pay J. S. Huston, or bearer, at the First National Bank of Lancaster, three hundred and seventy-five dollars, without defalcation, for value received, with interest." It was there contended that the character of the instrument was changed by the fact that in the contingency of the sum being sooner realized from the sale of the machinery it might become

payable within the year.   The court, after observing that the general rule, to be extracted from the authorities, undoubtedly requires that to constitute a valid promissory note, it must be for the payment of money at some fixed period of time, or upon some event which must inevitably happen, and that its character as a promissory note cannot depend upon future events, but solely upon its character when created, said: " Yet it is an equally well settled rule of commercial law that it may be made payable at sight, or at a fixed period after sight, or at a fixed period after notice, or on request, or on demand, without destroying its negotiable character.  The reason for this, said Lord Tenterden, in *Clayton* v. *Gosling*, 5 B. & C. 360, is that it ' was made payable at a time which we must suppose would arrive.' "   To the same effect are *Cota* v. *Buck*, 7 Met. 588; *Walker* v. *Woollen*, 54 Indiana, 164; *Woolen* v. *Ulrich*, 64 Indiana, 120; *Charlton* v. *Reid*, 61 Iowa, 166; *Andrews* v. *Franklin*, 1 Strange, 24; *Cook* v. *Horn*, 29 Law Times, (N. S.,) 369.

Upon like grounds it has been held that the negotiability of the note is not affected by its being made payable on or before a named date, or in instalments of a particular amount.  In *Ackley School District* v. *Hall*, 113 U. S. 135, 140, it was held that municipal bonds, issued under a statute providing that they should be payable at the pleasure of the district at any time before due, were negotiable; for, the court said: " By their terms, they were payable at a time which must certainly arrive; the holder could not exact payment before the day fixed in the bonds; the debtor incurred no legal liability for non-payment until that day passed."   In *Mattison* v. *Marks*, 31 Michigan, 421, which was the case of a note payable " on or before " a day named, it was said: " True, the maker may pay sooner if he shall choose, but this option, if exercised, would be a payment in advance of the legal liability to pay, and nothing more.   Notes like this are common in commercial transactions, and we are not aware that their negotiable quality is ever questioned in business dealings."   *Carlon* v. *Kenealy*, 12 M. & W. 139; *Colehan* v. *Willes*, Willes, 393; *Jordan* v. *Tate*, 19 Ohio St. 586; *Curtis* v. *Home*, 58 N. H.

504; *Howard* v. *Simpkins*, 60 Georgia, 340; *Protection Ins. Co.* v. *Bill*, 31 Connecticut, 534, 538; *Goodloe* v. *Taylor*, 3 Hawks, 458; *Ricker* v. *Sprague Manuf. Co.*, 14 R. I. 402. In the last-named case it was said that if the time of payment named in the note must certainly come, although the precise date may not be specified, it is sufficiently certain as to time. It was, consequently, held that a reservation in a note of the right to pay it before maturity in instalments of not less than five per cent of the principal at any time the semi-annual interest becomes payable, did not impair its negotiability; the court observing that a note is negotiable if one certain time of payment is fixed, although the option of another time of payment be given. In view of these authorities, as well as upon principle, we adjudge that the negotiability of the notes in suit was not affected by the provision that upon the failure of the maker to pay any one of the notes of the series to which those in suit belonged, the rest should become due and payable to the holder.

Our conclusion is that the court below did not err in holding the notes in suit to be negotiable according to the custom and usage of merchants. They bear upon their face evidence that they were so intended by the maker and the payee. It was well said by Judge Bunn, at the trial, that the inference that any one contemplating the purchase of the notes would naturally and properly draw, would be, 25 Fed. Rep. 809, 811, " that the freight cars had already been sold by the payee to the maker, and that the payee was to retain a lien and security upon them, in the way of mortgage, for the payment of the purchase price, which would enure equally and ratably to all the holders of the notes, according to their several amounts, without regard to the time when such notes should fall due. If this be so, the contract was an executed one, the consideration for the notes had already passed, and the payment of the notes would not be made to depend upon any condition whatsoever." *Judgment affirmed.*

MR. JUSTICE MILLER and MR. JUSTICE GRAY dissented.

MR. JUSTICE BREWER was not a member of the court when this case was argued, and took no part in its decision.