In re WELLS.

(District Court, M. D. Pennsylvania. November 9, 1905.)

No. 634.

1. SALES—CONDITIONS—SALE OR BAILMENT.

Whether a transaction by which goods are placed by one party in the hands of another to be sold is a bailment or a sale depends on its inherent character and purpose, and it is immaterial what name is given to it, or that it is an agreed condition that title shall not pass until payment is made.

·[Ed. Note.—For cases in point, see vol. 43, Cent. Dig. Sales, §§ 7–11.]

2. BANKRUPTCY—RECLAMATION OF PROPERTY—CONDITIONAL SALE—CONSIGNED ACCOUNT.

The bankrupt for a number of years had dealt in silk thread which she purchased from claimants. Having fallen behind in her payments, it was arranged that thereafter the goods should be "consigned" to her, and that the goods on hand should be invoiced and credited on her general indebtedness and charged to her on "consigned account." She was to report monthly the goods on hand and the amount sold, paying for the latter at the regular wholesale prices at which the goods were billed to her. It was further agreed that the goods should remain the property of claimants and subject to their order. No restriction was made on the manner of selling, or the prices to be charged by her, and she kept no separate account of receipts from goods sold. *Held*, that as to her creditors the transaction was a sale, and that the goods on hand at the time of bankruptcy could not be reclaimed, whether they were on hand when the arrangement was made or received thereafter.

In Bankruptcy. Sur petition of New London Wash Silk Company for reclamation of certain property.

F. E. Beers and R. L. Grambs, for petitioners.
A. V. Bower, for trustee.

ARCHBALD, District Judge. There is no particular magic in the term "consigned" or "consigned account." In a sense all goods shipped to another are consigned to him. The question is what was the inherent character of the transaction, which depends upon the purpose of it. Were the goods put in the hands of the one party by the other, to be sold for him and on his account, creating the relation of principal and factor; or were they turned over to such party, to be treated and disposed of as his own, being responsible to the other simply for the price? In the one case we have a trust or bailment, the goods throughout being those of the consignor or principal, as well as the moneys received for them. In the other there is a sale; the superadded condition, sometimes appearing, that the title shall not pass until the goods are· paid for, amounting to nothing as a restriction upon it. The cases of McCullough v. Porter, 4 Watts & S. 177, 39 Am. Dec. 68,

and Keystone Watch Co. v. Bank, 194 Pa. 535, 45 Atl. 328, are examples of the one class; and Thompson v. Paret, 94 Pa. 275, Peek v. Heim, 127 Pa. 500, 17 Atl. 984, 14 Am. St. Rep. 865, and Braunn v. Keally, 146 Pa. 519, 23 Atl. 389, 28 Am. St. Rep. 811, of the other; of which Thompson v. Paret and Peek v. Heim are particularly significant; the arrangement there being denominated a consignment, but this being held ineffectual to disguise the real character of the transaction. The subject is well disposed of in 24 Am. & Eng. Encycl. Law (2d Ed.) 1026, where it is said:

"In case of goods consigned to be sold for the consignor, who is to regulate the price and terms of sale, the factor is an agent, and the contract one of bailment. And this is so, though the consignment is made on a del credere commission. If, however, the consignee or factor is to sell upon terms fixed by himself, and is bound to pay to the consignor a fixed price, the contract is one of sale."

In the present instance, the bankrupt, Harriet E. Wells, and the firms of which she had been a member, had handled the silk thread of the claimants, the New London Wash Silk Company, for a number of years. In September, 1904, however, having fallen behind in her payments and become considerably indebted to them, it was arranged that thereafter the goods should be "consigned" to her—as it was said—instead of being sold to her in the regular way. It was further provided that she should take an inventory of those which she had on hand, which were to be thereupon credited on her general indebtedness and charged to her on "consigned account," and be thereafter regarded as held in that way. With respect to these, and those which were subsequently received, she was to report monthly the amount she had on hand and the sales which she had made, paying for the latter the regular wholesale prices, at which the goods were billed to her. It was urged by the silk company that the money received from sales should be kept separate, but this Mrs. Wells declined to accede to, as being impracticable. It was stipulated, however, that the goods should remain the property of the company, and that they were to be at liberty at any time to come and take them. At the time of this arrangement Mrs. Wells had on hand goods to the amount of $168.95, and some $485.87 were subsequently sent her, making a total of $654.82. Of this, at the time she went into bankruptcy, April 14, 1905, she had sold $448.73, and had paid to the silk company on account at various times $172.38, leaving $482.-44 to be accounted for, on the strength of which the balance in her hands at the time of her bankruptcy, amounting to $206.09, is now claimed.

The right to this, as pointed out above, depends, not on what the transaction was called, but on what was its real character. Were the goods sent to Mrs. Wells by the silk company to be sold on their account, she merely acting as their factor or agent in disposing of them; or, in making sales did she act for and on her own account, realizing what she could, and being answerable to them only for the wholesale price? It seems to me that there can be but one answer to this inquiry. As to goods which she had on hand September 8, 1904, at the time of the supposed change in her relation to the silk company, there could be no such shifting over from one account to the other.

140 F.—48

as was attempted. She had numerous creditors, whose debts are still unpaid, and the title to the property which she had could not be made a mere matter of bookkeeping in this way. Nor can it be determined, or at least it has not been, how much, if any, of these goods are to be found among the two hundred and odd dollars worth now in controversy. But, without stopping over this, as to all the goods covered by the so-called consignment account, on hand at the time or subsequently sent her, it is clear that they were dealt in and disposed of by Mrs. Wells as her own. Upon their receipt they were mingled with her other stock, and not kept separate as would be expected in the case of commission goods, although it is possible that they could have been identified by the tags upon them, if it became necessary, as could, however, other things in the store, with little doubt. But, more than this, they were invoiced and charged to her by the silk company, at definite prices, and sold by her on her own account, at such figures and to such parties as she saw fit, over which the silk company had no control, except as they might have taken away the handling of their goods, if she cut under their minimum retail price. It is true that she was to report the sales made each month, and make payments in accordance therewith (an arrangement, however, that was only very sparingly complied with or enforced), and was simply to be responsible for what she sold. But the money received was not to be kept separate, and the only purpose of the provision, that she should make monthly reports, was apparently in order to keep track of her sales, and thereby fix the amount for which she was to account. Nor does it add any particular strength to the case that the goods were to remain the property of the silk company until paid for. This was an unnecessary stipulation, if the transaction was in reality a bailment, and raises the suspicion that in resorting to it the claimants had their doubts. At most it was an attempted condition by which the better to secure the price, enforceable no doubt between the parties, even to the extent of retaking the goods, but worthless as to creditors, and so of no avail here. Neither does it affect the character of the transaction that Mrs. Wells was only to be responsible for what she sold, having the privilege—or being obliged, if you will—to return what she did not. On the other hand, she had the right to retain the whole by paying the price, which practically made out what is known in the law as a case of "sale or return," in which the title passes to the party to whom the goods are delivered, subject to the option of returning them if he so desires. Moss v. Sweet, 16 Q. B. 493; Hunt v. Wyman, 100 Mass. 198; Hickman v. Schimp, 109 Pa. 16; In re Miller & Brown (D. C.) 135 Fed. 868. While, then, in some aspects the case may be a close one, it is to be remembered that the burden is on the claimants, and under all the circumstances does not seem to me to have been met.

The petition is dismissed, with costs.