## In re UNITED STATES ELECTRICAL SUPPLY CO.

(District Court, S. D. Illinois, N. D. August 28, 1924.)

1. **Bankruptcy** &#x229C;140(1)—Property sold under conditional sale contract held not subject to reclamation.

Claimant furnished wire to bankrupt, an electrical company, to be sold and used as required in its business, under a contract which required it to report monthly the quantity so used or sold and to pay for the same; the contract providing that the wire should remain the property of claimant until so reported sold and charged to bankrupt. *Held* that, though called a consignment contract, it was not one of bailment or agency, but one of conditional sale, and that, under the law of Illinois which subjects property held under such contracts to levy by execution creditors of the buyer, so much of the wire as remained at the time of bankruptcy was not subject to reclamation by the seller.

2. **Sales** &#x229C;457—Distinction between contract of "consignment" and of "conditional sale."

If a contract under which personal property is delivered to another permits him to sell the same at retail, at prices fixed by himself, and to retain the proceeds, his only obligation being to pay for the property as and when sold at prices fixed by the contract, it is not one of "consignment," but of "sale," though title is reserved in the seller until resale.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Conditional Sale; Consignment.]

In Bankruptcy. In the Matter of the United States Electrical Supply Company, bankrupt. On exceptions to report of special master on petition for reclamation of the Rome Wire Company. Exceptions overruled, and report confirmed.

Miller, Elliott & Westervelt, of Peoria, Ill., for Rome Wire Co.

Covey, Campbell & Covey and Weil, Bartley & Weil, all of Peoria, Ill., for trustee.

FITZHENRY, District Judge. The Rome Wire Company filed its petition for reclamation of certain property in the hands of the trustee in bankruptcy in this cause, which

the petitioner claims were goods held by the bankrupt upon consignment from the petitioner. The cause was heard by Hon. Daniel H. Gregg, referee in bankruptcy, as special master, who found against the petitioner. It was heard by the court upon exceptions to the report of the special master. The court adopts the findings, reasoning, and conclusions of the special master as set out in his report, which is as follows:

"On June 26, 1923, the Rome Wire Company, a corporation, doing business at Rome, N. Y., filed in the office of the clerk of this court a petition to reclaim from Harry A. Frankel, trustee of the above-named bankrupt estate, a large quantity of wire alleged to be in the possession of the trustee at the Peoria and Springfield stores of the bankrupt company, a particular description of which is attached to said petition. * * *

"The petition to reclaim this property was answered by the trustee, in which answer he stated that he was not advised as to whether the petitioner had placed any wire or other property in the possession of the bankrupt under the alleged contract attached to the petition, and therefore neither admitted nor denied the same, but called for strict proof thereof.

" * * * The evidence was taken before me on July 6, 1923, and December 13, 1923, and at both of these hearings the parties were represented by their attorneys as aforesaid. By stipulation of the parties depositions of several witnesses residing at Rome, N. Y., were taken and have been introduced in evidence before me.

[1] "The contract under which the goods in question were delivered by the petitioner to the United States Electrical Supply Company, and which was introduced in evidence as 'Exhibit 4,' is dated December 21, 1918. The main features of this contract are as follows:

" 'Quantity.—The Rome Wire Company, hereafter known as the seller, agrees to ship to the United States Electrical Supply Company, hereafter known as the buyer, on memorandum invoice, such stock of rubber-covered code wires, lamp cords and telephone wires as is necessary in the judgment of the seller to adequately care for the requirements of the buyer, as based on the volume of business transacted.

" 'Insurance and Storage.—The wire is to be stored and insured for its full value at the expense of the buyer, and in event of loss or damage by fire, or other cause, the buyer shall reimburse the seller at the then market prices, for the full value of the damaged stock.

" 'Report of Sales.—Not later than the 1st of each month the buyer shall make report of all sales since date of last report. In event of change in prices, the next following report of sales will be divided so as to show the amount sold prior to and the amount sold subsequent to the change in prices.

" 'Prices.—Material sold from consigned stock will be billed at prices in effect with the seller on the date of sale, unless the buyer has contracted for his requirements, at specified prices, in which case the material sold will be billed in accordance with contract.

" 'Broken Packages.—When a case, coil or bag of wire is broken into, the buyer will take the entire balance of the package into his own stock, reporting the entire quantity sold. In the case of wire shipped on reels, actual sales will be reported until there remains 200 feet or less on a reel, at which time the buyer will take the balance into his own stock, reporting same as sold.

" 'Terms.—1%—10, net 60 days.

" 'Ownership.—This wire will remain the property of the seller until reported as sold and actually invoiced to the buyer. In case the buyer should fail to remit promptly his purchases in accordance with the terms of sale, or in event of the actual failure of the buyer, or if the seller has reason to question the financial stability of the buyer, then the seller may, at his discretion, immediately remove all consigned stock.

" 'Other Conditions.—Buyer agrees to purchase from the seller his entire requirements of this class of material, in such sizes as are manufactured by the seller, except in event of the inability of the seller to make delivery necessary to the requirements of the buyer. The buyer further agrees that in event of his desiring to terminate this agreement that he will purchase the material in stock at market prices in effect with the seller at the time of termination.

" 'Termination.—This agreement may be terminated by either party upon thirty days' written notice.'

"The question to be determined by the master is whether this contract is a bailment or agency contract, or whether it is a conditional sale contract, with a reservation of title in the vendor to secure a lien on the goods sold for the unpaid purchase price.

"The contract, by its terms, does not purport to appoint the United States Electrical

Supply Company as agent of the Rome Wire Company to make sale for it and to return the proceeds to the wire company. The parties all the way through the contract are designated as 'seller' and 'buyer' and not as 'agent' and 'principal.'

"In the case of Mishawaka Woolen Mfg. Co. v. Westveer, 191 F. 465, 468, 112 C. C. A. 109, 112, the Circuit Court of Appeals for the Sixth Circuit, in construing a contract of this kind, said, with regard to similar language:

"'There is nothing to indicate, certainly not clearly to indicate, that he [the purchaser] took the goods upon consignment, or as factor, or as an agent of any kind, with power to transmit title from the vendor to subpurchasers. The very use of such terms as "vendor" and "purchaser" also "punched goods are sold subject to our having them in stock," as used in the agreement, would seem expressly to negative all idea of agency. Chicago Railway Equipment Co. v. Merchants' Bank * * * (136 U. S. 268, 282, near bottom, 10 S. Ct. 999, 34 L. Ed. 349).'

"The only language in the contract which I am able to find, which it might be contended indicated that the wire was delivered on an agency or bailment contract, is the language which is used in the paragraph entitled 'Prices' where the material sold is designated as 'consigned stock.' The contract is also headed 'Consigned Stock Agreement.'

"In the case of In re Wells (D. C.) 15 Am. Bankr. Rep. 419, 140 F. 752, Judge Archbald of the Middle District of Pennsylvania, in considering the effect of the use of the word 'consigned' in a contract of this kind, said:

"'There is no particular magic in the terms "consigned" or "consigned account." In a sense all goods shipped to another are consigned to him. The question is what was the inherent character of the transaction, which depends upon the purpose of it. Were the goods put in the hands of the one party by the other, to be sold for him and on his account, creating the relation of principal and factor; or were they turned over to such party, to be treated and disposed of as his own, being responsible to the other simply for the price? In the one case we have a trust or bailment, the goods throughout being those of the consignor or principal, as well as the moneys received for them. In the other, there is a sale; the superadded condition, sometimes appearing, that the title shall not pass until the goods

are paid for, amounting to nothing as a restriction upon it.'

"In the case of Chickering v. Bastress, 130 Ill. 203, 216, 22 N. E. 542, 543 (17 Am. St. Rep. 309), our Supreme Court said:

"'It is true that the word "consigned" was written across the bill, but there is no magic in that word which can take from the transaction its real character.'

[2] "There is no provision in the contract, such as is found in all valid agency or bailment contracts, that the proceeds of the goods, when sold, should be kept separate and apart by the consignee and should be the property of the consignor and remitted to the consignor. Under the heading 'Terms' appears the following: '1%—10, net 60 days,' that is, if the purchaser paid for the goods in ten days it received a discount of 1 per cent. and had 60 days in which to pay for them after sales were made of it, in which case the bills were net. The evidence shows conclusively that during all of the four years and more the parties did business under this contract, the United States Electrical Supply Company was permitted to and did sell from this stock of wire and did collect the proceeds of all such sales and deposited such proceeds of sales in its general bank account and mingled the same with its other funds. The evidence shows that this was at all times known by the petitioner and acquiesced in by it. (See evidence of Mr. McConnell, page 25.) The evidence also shows that at the time of the failure of the United States Electrical Supply Company on March 10, 1923, that the bankrupt was indebted to the petitioner in the sum of $11,600, the greater portion of which was for sums which the bankrupt failed to pay to the petitioner in accordance with the alleged consignment contract. (See McConnell's deposition, page 28.)

"In the case of Ludvigh v. American Woolen Co. of New York et al., 188 F. 30, 33, 110 C. C. A. 180, 183, the Circuit Court of Appeals for the Second Circuit said:

"'Contracts of sale under which title is to remain in the vendor, although the vendee may consume the goods or sell them and apply the proceeds to his own use, are fraudulent as to creditors, because the stipulation that title is to remain in the vendor is entirely inconsistent with the purpose of the contract.' Citing In re Garcewich, 115 F. 87, 53 C. C. A. 510. This language was cited approvingly by Judge Dodge in the case of Flanders Motor Co. v. Reed, 220 F. 642, 136 C. C. A. 250 (C. C. A. 1st Circuit).

"Our own Circuit Court of Appeals, in the case of In re Bement (Smith v. Mishawaka Woolen Mfg. Co.) 172 F. 98, 96 C. C. A. 412, came to the same conclusion. The contract in this case provided that 'the title and property in all the goods herein mentioned shall remain in the vendor until fully paid for in cash, if payment for the same shall not be properly made when due or if at any time before the same shall be fully paid for the purchaser shall become insolvent, or shall, in the opinion of the vendor, be in danger of insolvency, or the vendor, in its judgment, shall, for any reason, whatever, deem itself in danger of losing the price of the said goods, then the vendor may, at its option, reclaim and take possession of so much of the said goods as shall then remain in the hands of the purchaser unsold.' This case arose in Wisconsin and involved the construction of a Wisconsin contract. Judge Grosscup, in rendering the opinion of the court, on page 99 (96 C. C. A. 413), said:

" 'In some states, by general law, conditional sales of goods that go into stock to be sold by retail are, as against creditors, held to be invalid; there being in this respect a clear distinction between machinery that becomes a permanent part of some factory building, and goods that go into the possession of the retailer for resale. Troy Wagon Co. v. Hancock, Trustee, 152 Fed. 605, 81 C. C. A. 595 (Circuit Court of Appeals, Seventh Circuit). The ground for this distinction is that to allow such secret title to attach to goods in the vendees' possession for resale is a constructive fraud upon creditors.

" 'No conditional sale holding of this character, by the courts of Wisconsin, has been brought to our attention; nor any holding of the Wisconsin courts contrary thereto. But those courts have held, upon precisely the same grounds, that chattel mortgages on goods going into stock for resale—no provision being made that the money thus received should be turned over to the mortgagee—is a constructive fraud upon creditors; and though, technically, in the case of a chattel mortgage, title passes, while in conditional sales title is reserved, the considerations of public policy that make the transaction a constructive fraud upon creditors is the same in the one as in the other.

" 'In the absence of decision by the Wisconsin courts we would hold this to be the law in Wisconsin.'

"Judge Ray of the Southern District of New York, in the case of Pontiac Buggy Company v. Skinner, 158 F. 858–863, also stated the rule to be as follows:

" 'If the vendor parts with the possession to the vendee and invests him with the right to sell as his own and treat the proceeds as his own then the sale is absolute, and the title is in the vendee absolutely, as fraud is presumed even if there be an agreement that title to the property shall remain in the vendor until the debt is paid. But if the agreement be that the vendee may sell, and that if he does he shall pay over the proceeds to the vendor to apply on the debt, then there is no fraud, and the vendor has the title. If a mortgage permits the mortgagor to sell and use the proceeds as his own the transaction is presumed fraudulent, and the mortgage is void.'

"See, also, to the same effect, Miller Rubber Co. v. Citizens' Trust & Savings Bank, 233 F. 488–491, 147 C. C. A. 374, certiorari denied by United States Supreme Court, 240 U. S. 628, 37 S. Ct. 14, 61 L. Ed. 536; Mishawaka Woolen Mfg. Co. v. Westveer, 191 F. 465, 112 C. C. A. 109 (C. C. A. 6th Circuit).

"Since the amendment of section 49a (Comp. St. § 9631) of the Bankruptcy act in 1910, the trustee in bankruptcy stands in the position of an execution creditor as to all property which comes into the hands of the trustee. Fairbanks v. Wills, 240 U. S. 642, 36 S. Ct. 466, 60 L. Ed. 841; In re Mina (D. C.) 270 F. 969.

"In Illinois, conditional sale contracts, although acknowledged and recorded in the manner provided by the Chattel Mortgage Act, will not prevent a creditor, armed with an execution from levying upon the property in the hands of the vendee. Gilbert v. National Cash Register Co., 176 Ill. 288, 52 N. E. 22; Rock Island Plow Co. v. Reardon, 222 U. S. 354, 32 S. Ct. 164, 56 L. Ed. 231. The last-mentioned case is one which went up from this court.

"Under the law of Illinois, where a chattel mortgage is given which is regular upon its face and is acknowledged and recorded in the usual way, if the mortgagor is permitted to sell the goods in the usual course of business, such mortgages are fraudulent and void as to execution creditors. See Dunning v. Mead, 90 Ill. 376; Deering v. Washburn, 141 Ill. 153, 29 N. E. 558.

"In the case of Taylor v. Fram, 252 F. 465, 164 C. C. A. 389 (C. C. A. 2d Circuit), the court said:

" 'If the bankrupt had given the defendants a mortgage upon the stock in his store,

and had been permitted to sell the stock covered by it and to deposit the moneys received in his general account, and use them to meet his liabilities as if no mortgage existed, instead of paying them over to the mortgagee, we should be obliged to hold that the mortgage was fraudulent as against the trustee in bankruptcy. Southard v. Benner, 72 N. Y. 424, 429; Hangen v. Hachemeister, 114 N. Y. 566, 570, 571, 21 N. E. 1046, 5 L. R. A. 137, 11 Am. St. Rep. 691. If that be so as to a mortgage of record, and of which creditors have constructive notice, it should follow a fortiori that an agreement of which creditors have no constructive notice, which reserves title to the consignor, who nevertheless and contrary to its terms permits the consignee to make sales, and deposit the proceeds of sales in his general bank account, and use them for his own purposes, is equally fraudulent as against the trustee.'

"To the same effect, see In re Wells (D. C.) 15 Am. Bankr. Rep. 419–422, 140 F. 752.

"In the Taylor Case the goods were shipped to the consignee on memorandum statements or bills, title was reserved in the consignor, and the consignor agreed to turn over the proceeds of the sales of all merchandise made by him on Monday for sales made the preceding week. The consignor permitted the consignee to make sales of the merchandise in the regular course of the business and to deposit the proceeds in the consignee's own bank account and to use these proceeds in the regular course of the consignee's business. No attempt was made to keep the funds separate or carry out the agreement with regard to remitting the proceeds on every Monday. The court held that notwithstanding the fact that the contract on its face created a bailment, that the manner in which the parties conducted the business was fraudulent as to creditors and that the consignor had no right to reclaim the goods from the trustee in bankruptcy.

"The Supreme Court of the United States, in the case of Hervey v. Rhode Island Locomotive Works, 93 U. S. 664, 23 L. Ed. 1003, in a case which went up from the Southern District of Illinois, in construing the law of Illinois with regard to this class of contracts, on page 672 said:

" 'The policy of the law in Illinois will not permit the owner of personal property to sell it, either absolutely or conditionally, and still continue in possession of it. Possession is one of the strongest evidences of title to this class of property, and cannot be rightfully separated from the title, except in the manner pointed out by statute. The courts of Illinois say that to suffer without notice to the world the real ownership to be in one person, and the ostensible ownership in another, gives a false credit to the latter, and in this way, works an injury to third persons. Accordingly, the actual owner of personal property creating an interest in another, to whom it is delivered, if desirous of preserving a lien on it, must comply with the provisions of the Chattel Mortgage Act.

" 'Secret liens which treat the vendor of personal property, who has delivered possession of it to the purchaser, as the owner until the payment of the purchase money, cannot be maintained in Illinois. They are held to be constructively fraudulent as to creditors, and the property, so far as their rights are concerned, is considered as belonging to the purchaser holding the possession. McCormick v. Hadden, 37 Ill. 370; Ketchum v. Watson, 24 Id. 591. Nor is the transaction changed by the agreement assuming the form of a lease. In determining the real character of a contract, courts will always look to its purpose, rather than to the name given to it by the parties. If that purpose be to give the vendor a lien on the property until payment in full of the purchase money, it is liable to be defeated by creditors of the purchaser who is in possession of it.'

"See, also, Staver Carriage Co. v. Richardson, 203 Ill. App. 620–625.

"The contract does not fix the price which the United States Electrical Supply Company was to receive for the wire, and the evidence shows that no attempt was ever made by the Rome Wire Company to regulate such prices. (See deposition pages 12 and 29.) The courts hold that this is an element of the contract to be taken into consideration in determining whether it is bailment. The reason is that if the contract is a bailment the proceeds belong to the consignor and the consignor is interested in seeing that the goods are sold at the proper prices.

"In the case of Miller Rubber Co. v. Citizens' Bank, 37 Am. Bankr. Rep. 542, 547, 233 F. 488, 491, 147 C. C. A. 374, 377, the court, after announcing its finding that the contract amounted to a sale and not a bailment, said:

" 'We find confirmation of this view in the failure of the consignors to fix by the contract the prices at which the agent could

sell the goods to its customers, and in their failure to therein make any provision for the remitting to the consignors of the proceeds received by it for the goods so sold.'

"In the case In re Wells (D. C.) 15 Am. Bankr. Rep. 419, 140 F. 752, the court, in finding that the contract there amounted to a sale, among other things said that the goods were 'sold by her (the bankrupt) on her own account at such figures and at such prices as she saw fit,' over which the silk company (the consignor) had no control, except as they might have taken away the handling of their goods if she cut under their minimum retail price.

"This is also the rule laid down by the Supreme Court of Illinois, as will be seen from examination of the case of Chickering v. Bastress, 130 Ill. 206, 215, 22 N. E. 542, 543 (17 Am. St. Rep. 309), where the court said:

"'In our opinion, it was not a contract of bailment, and the provisions authorizing Pelton & Co. [the consignees] to determine solely for themselves at what prices they would sell the pianos from their store, is almost conclusive that in reality they were not acting as the agents or factors of the Chickerings.'

"This language was quoted approvingly by the Circuit Court of Appeals for the Seventh Circuit in the case of In re Leflys, 36 Am. Bankr. Rep. 306–309, 229 F. 695, 144 C. C. A. 105.

"Another element of this contract which indicates that it is a sale and not a bailment is that there is no provision in it for the return of the goods to the consignor at the end of the contract period.

"The contract, under the head of 'Termination,' provides that it may be terminated by either party upon giving 30 days' written notice, and under the head of 'Other Conditions' provides 'the buyer further agrees that in event of his desiring to terminate this agreement that he will purchase the material in stock at market prices in effect with the seller at the time of the termination.'

"In case of Flanders Motor Co. v. Reed, 220 F. 643, 644, 136 C. C. A. 251, 252 (C. C. A. 1st Circuit), the court, in pointing out the difference between the contract there being construed and the one which was construed in the case of Ludvigh v. American Woolen Co., 231 U. S. 522, 34 S. Ct. 161, 58 L. Ed. 345, said:

"'As the opinion below points out, there were no provisions either that the proceeds should be the vendor's in case of sales made by the bankrupts or that the parts should be kept distinct in any way from the bankrupts' other goods until sold, or that the parts remaining unsold at the end of the year for which the agreement was to continue should be returned to the vendor. In all these respects the agreement in Ludvigh v. American Woolen Co., 231 U. S. 522, 34 S. Ct. 161, 58 L. Ed. 345, upon which the petitioner relies, differed from the agreement here.'

"In the case of Parlett v. Blake, 26 Am. Bankr. Rep. 25, 31, 188 F. 200, 204, 110 C. C. A. 72, 76 (C. C. A. 8th Circuit), the court said:

"'This case on the contrary concerns property held by the carpet company with no option or right to return to the consignor and, therefore, not as a bailee or agent but with a duty and obligation to take and pay for it and, therefore, as the owner.'

"In the case of In re Galt, 120 F. 64, 56 C. C. A. 470 (C. C. A. 7th Circuit), which was cited by petitioner's counsel, seems to have involved a contract entirely different from the one here. The contract, as found by the court, appointed the consignee as agent to sell for the consignor, allowed the consignee regular commissions, the proceeds were to be kept separate and apart and remitted to the consignor, and Galt was not given the option to pay for the goods in money. This case was decided in 1903, previous to the amendment of section 47 of the Bankruptcy Act, which placed the trustee in bankruptcy in the position of an execution creditor.

"In the Illinois cases cited by petitioner's counsel, the proceeds of the sales were to be kept separate and apart and remitted to the consignor. My attention has not been called to any case where the consignee was permitted to 'mingle the proceeds of the sales of the consigned goods with the consignee's own money and to use these proceeds in the usual course of his business, where it has been held that such a contract constitutes a bailment and is valid as against the rights and interests of an execution creditor or a trustee in bankruptcy.

"A contract of this nature is valid as between the parties as a conditional sale contract, but is constructively fraudulent as against a trustee in bankruptcy, who stands in the position of an execution creditor.

"Cases which have construed contracts similar to the one now being considered, before the Circuit Court of Appeals for the

Seventh Circuit, are the following: In re Gilligan (Troy Works v. Hancock) 23 Am. Bankr. Rep. 668, 152 F 605, 81 C. C. A. 595; In re Bement (Smith v. Mishawaka Woolen Mfg. Co.) 172 F. 98, 96 C. C. A. 412; In re Leflys (Strauss Bros. Co. v. Wisconsin Trust Co.) 36 Am. Bankr. Rep. 306, 229 F. 695, 144 C. C. A. 105.

"My conclusion is that the contract between the parties in this case was not a bailment but was a sale, with reservation of title in the seller until the purchase price was paid and that such reservation of title is not valid as against the trustee in bankruptcy in this case. I therefore recommend that the petition be dismissed at the costs of the petitioner."

The exceptions to the report of the special master will be overruled, and the report and recommendation approved. And it is so ordered.