# Sarah J. C. Clarke v. John B. Hunter.

1. CONTRACTS—*Where Different Instruments are Executed as Evi-dence of one Transaction.*—Where different instruments are executed as evidence of one transaction or agreement they are to be read together and construed as one instrument.

2. PROMISSORY NOTE—*Definition.*—A promissory note is "a written promise by one person to pay another person therein named, or order, a fixed sum of money, at all events and at a time specified therein, or at a time which must certainly arrive."

3. SAME—*When Not Payable on a Contingency.*—A note is not payable on a contingency because the maker has the option of paying it on or before a certain date, and such a provision does not destroy its negotiability.

4. SAME—*Requisites as to Validity.*—To constitute a valid promissory note, it must be for the payment of money which will certainly become due some time, although it is uncertain when that time will come. And where the payment depends upon a contingency, it makes no difference that such contingency does in fact happen afterward, for its character as a promissory note does not depend upon future events, but solely upon its character when created.

5. SAME—*Duty of Maker in Making Payments.*—The maker of a promissory note must know at his peril that the person to whom he makes payment has authority to receive it, and he who is negligent in this regard must bear the loss of his dereliction rather than an innocent person.

6. SAME—*Negotiable, Although Secured by Mortgage.*—A promissory note, although secured by mortgage, is still commercial paper assignable at law.

Assumpsit.—Trial in the Circuit Court of Sangamon County; the Hon. JAMES A. CREIGHTON, Judge, presiding. Finding and judgment for defendant; appeal by plaintiff. Heard in this court at the May term, 1898. Reversed and judgment entered in this court for appellant. Opinion filed June 3, 1899.

GREENE & HUMPHREY, attorneys for appellant.

A promissory note, though secured by a mortgage, is still commercial paper, assignable at law; and when the remedy is sought upon that, all the rights incident to commercial paper will be enforced in the courts of law; but when resort is had to a court of equity to foreclose the mortgage, that court will let in any defense which would have been

Clarke v. Hunter.

good against the mortgage in the hands of the mortgagee himself; this, regardless of the fact that the assignee may have purchased the notes in good faith, and before their maturity.   Olds v. Cummings, 31 Ill. 188.

A defense good in equity is not good at law as against the assignee before maturity of commercial paper.   Kleeman v. Frisbie, 63 Ill. 482; Haskell v. Brown, 65 Ill. 29.

It is the duty of a person paying a note to use reasonable and ordinary precaution to avoid imposition, for it is against reason that a party who stands fair should suffer for the negligent conduct of another.   Anderson v. Warne, 71 Ill. 22; Keohane v. Smith, 97 Ill. 156; Bank v. Beaird, 7 Ill. App. 80.

GRAHAM & MILLER and BEACH & HODNETT, attorneys for appellee.

Provisions in mortgage and not found in note will control.   Dan'l Neg. Inst., Sec. 835; Tiedeman on Com. Paper, Sec. 40.

It is a requisite of the negotiability of a promissory note that the instrument should only call for payment of money. If the paper should provide for the payment of money and the doing of something else, it is deprived of the character of negotiability and becomes an ordinary contract.   Tiedeman on Com. Paper, Sec. 29; Randolph on Com. Paper, Vol. 1, Sec. 208; Van Zandt v. Hopkins, 151 Ill. 248.

The note, when construed with the mortgage, which is part of it, is not negotiable.   Lowe v. Bliss, 24 Ill. 168; Van Zandt v. Hopkins, 151 Ill. 248; Brooke v. Struthers, (Mich.), 35 L. R. A. 536; Iron City Nat. Bank v. McCord, 139 Pa. St. 52; Costello v. Crowell, 127 Mass. 293; Overton v. Tyler, 3 Pa. St. 346; Sweeney v. Thickstun, 77 Pa. St. 131; Windsor Savings Bank v. McMahon, 3 L. R. A. 192; Warren v. Gruwell et al. (Kas.), 48 Pac. Rep. 205; Chapman v. Steener et al. (Kas.), 48 Pac. Rep. 607.

MR. JUSTICE HARKER delivered the opinion of the court. On February 20, 1889, appellee executed and delivered to

Edward T. Oliver a promissory note of which the following is a copy:

"$5,000.          SPRINGFIELD, Ill., February 20, 1889.

On March 1, 1894, after date, value received, for money loaned, I promise to pay to the order of Edward T. Oliver, five thousand dollars, with interest on the same at the rate of eight per cent per annum after due until paid, according to the tenor of a certain mortgage deed, bearing even date herewith, given by John B. Hunter and wife to Edward T. Oliver.

Payable at the State National Bank with exchange.

JOHN B. HUNTER."

To secure its payment he and his wife at the same time executed and delivered to Oliver a mortgage on certain lands in Logan county, of which the following is a copy:

"The mortgagors, John B. Hunter and Elizabeth E. Hunter, his wife, of the county of Sangamon and State of Illinois, for and in consideration of five thousand dollars in hand paid, mortgage and warrant to Edward T. Oliver, of the county of Sangamon, the following described real estate, to-wit: The southwest quarter of section eleven (11), east half of the northwest quarter of section fourteen (14), and eighteen (18) acres of the east half of southwest quarter, section twelve (12), and all in township seventeen, north of range two, west of third principal meridian, 258 acres in all, together with all the rents, issues and profits thereof, situated in the county of Logan, in the State of Illinois, hereby releasing and waiving all rights under and by virtue of the Homestead Exemption laws of this State, to secure the payment of eleven promissory notes of even date herewith, executed by said John B. Hunter and payable to the order of said Edward T. Oliver, as follows: One principal note for the sum of five thousand dollars, payable on the first day of March, 1894; one interest note for the sum of one hundred and fifty dollars, payable on the first day of September, 1889; and nine interest notes for the sum of one hundred and fifty dollars each, and payable, respectively, on March 1, 1890; September 1, 1890; March 1, 1891; September 1, 1891; March 1, 1892; September 1, 1892; March 1, 1893; September 1, 1893; all bearing interest at the rate of eight per cent per annum from maturity until paid, payable semi-annually.

"Now if said notes are paid when due according to their

Clarke v. Hunter.

tenor and effect, then this mortgage to be null and void, otherwise to be and remain in full force, provided that the neglect or refusal to pay any of said notes when due or in case of waste or non-payment of taxes and assessments, or the neglect to insure and to keep insured the buildings on said premises in the amount of at least —— hundred dollars, in such company as the legal holder of said note may direct, for the benefit of such legal holder does, it is hereby agreed, render the principal note with all accrued interest thereon immediately due and payable by the said John B. Hunter, at the option of the legal holder of said note, and this mortgage may be foreclosed. And the said John B. Hunter and Elizabeth Hunter hereby waive notice of such option and authorize and empower Geo. M. Brinkerhoff, or any attorney of any court of record, to enter the appearance of the said John B. Hunter and Elizabeth E. Hunter, upon the filing of any bill to foreclose this mortgage in any court having jurisdiction thereof, and to file an answer for the said John B. Hunter and Elizabeth E. Hunter, stating the amount that may then be due and owing on said notes in this mortgage mentioned, for principal and interest, also for costs, taxes, assessments, insurance, attorney's fees and other money expended under the provisions contained herein, whether the same be due by the terms of this mortgage or by the option of the said Edward T. Oliver, his heirs, executors, administrators or assigns, and to consent and agree to a decree being entered for the amount therein stated to be so due and owing, in favor of the said Edward T. Oliver, his heirs, executors, administrators or assigns; that no appeal shall be taken from such decree, and no writ of error.

"In the case of the filing of any bill to foreclose this mortgage, this court may appoint Geo. M. Brinkerhoff, or any competent person, receiver with power to collect the rents and profits arising out of said premises during the pendency of such foreclosure suit and until the right to redeem said premises expires and such rents and profits so collected shall be applied to the payment of taxes, insurance, or toward the payment of such indebtedness upon the foreclosure of this mortgage by proceedings in court; and in case said premises are occupied by the mortgagors, they hereby agree to become tenants of such receiver or to surrender immediate possession of said premises to him. The costs of such foreclosure shall be paid by the mortgagors, which shall include a reasonable solicitors' fee, not

to exceed five per cent, to be taxed by the court and collected as other costs.

"Dated this twentieth day of February, A. D. 1889.

"Signed, sealed and delivered in the presence of Lewis Grubb.

[SEAL.]                          · "JOHN B. HUNTER,
                                 "ELIZABETH HUNTER."

On March 19, 1889, Oliver assigned the note and mortgage without recourse to David Saunderson, trustee. On July 12, 1890, appellee conveyed the land to his son, O. J. Hunter, subject to the mortgage. On February 4, 1891, O. J. Hunter conveyed the land to Caleb K. Lucas and George T. Lucas without referring to the mortgage. On April 15, 1891, Caleb K. Lucas notified Oliver that he desired to make a payment of $3,000 on the note, whereupon arrangements were made between Oliver and Saunderson to receive the money although the note was not due. On April 27, 1891, Lucas remitted by draft to Brinkerhoff & Oliver $3,120—$3,000 of which was to be credited on the note. The note was at that time in the possession of Saunderson, and was not credited with the $3,000 payment.

Early in the year 1892 Saunderson sold and assigned the note and mortgage to Brinkerhoff & Oliver, and they, on the 18th of March of that year, sold and assigned them to appellant for $5,015. After the payment of the $3,000 by Lucas, Brinkerhoff & Oliver paid interest on the $5,000 to Saunderson up to the time that he sold to them and they received interest from Lucas on the remaining $2,000. All payments made by Lucas up to the 10th of November, 1893, were made by him to Brinkerhoff & Oliver. He first learned in October of that year that appellant had bought the paper, and on the 10th of November he paid the interest on $2,000 to her husband. He also learned then, for the first time, that the note had never been credited with the $3,000 payment made by him. Oliver was then dead and the effects of Brinkerhoff & Oliver were in the hands of a receiver. Lucas has fully paid the remaining $2,000 and interest thereon. Appellant was ignorant of the fact that Lucas had paid the $3,000 at the time of purchasing

Clarke v. Hunter.

the note.   This suit was brought by her to recover from appellee, the maker of the note, its face value, less what had been paid her and interest.   A trial by the court resulted in a judgment against her.

In the presentation of this case counsel have assumed that the right of appellant to recover depends entirely upon whether the note sued on is a negotiable instrument.   Upon the one hand it is argued that it is negotiable, and that she can not, therefore, be prejudiced by the payment of the $3,000 made by Lucas, because she took it before maturity and without notice of the payment.   Upon the other hand it is argued that it is not negotiable, and that she took it subject to all defenses that could have been made had the suit been brought in the name of the original payee.

It is a familiar rule of law that where different instruments are executed as evidence of one transaction, or agreement, that they are to be read together and construed as one instrument.   Appyling that rule to this case, we will look to the mortgage to see whether there is anything therein contained which deprives the note of its negotiability.   It can not be claimed that there is anything affecting it in that regard other than what relates to payment. By reference to the mortgage it will be seen that its provisions relating to the note are that it is made to secure the payment of one principal note of $5,000, payable on the 1st of March, 1894, and ten interest notes for $150 each, payable in succession every six months, to the order of Edward T. Oliver; that if the notes are paid when due the mortgage shall be void, otherwise to remain in force, provided that the neglect or refusal to pay any of the notes when due, or in case of waste or non-payment of taxes and assessments, or the neglect to insure and keep insured the buildings on the mortgaged premises, in the amount of at least —— hundred dollars, in such company as the legal holder of the note may desire, for the benefit of the holder, it is agreed will render the principal note with accrued interest immediately due and payable, at the option of the legal holder, and that the mortgage may be foreclosed; and then provisions fol-

low for filing a bill to foreclose the mortgage for the amount due upon the notes and for costs, taxes, assessments, insurance, attorney's fees, and money expended under other provisions of the mortgage, including a reasonable solicitor's fee, not exceeding five per cent, to be taxed as other costs.

What effect have these provisions in the mortgage upon the payment of the $5,000 mentioned in the note?

The mortgage says the note is payable March 1, 1894, with eight per cent interest after maturity, and so says the note. The only independent provision of the mortgage is that which gives the holder the option to declare the note due upon the neglect or refusal of the mortgagor to pay interest notes when due, or to pay taxes or assessments, or neglect to insure, and to foreclose the mortgage. This clause was inserted for the benefit of the holder of the note, and under which the maker could claim no rights. Upon an offer to purchase the note and mortgage by a legal holder before the maturity thereof, the information would be furnished by the documents themselves that no previous holder had exercised such option, and it is hard to imagine any sufficient reason why such an option, merely, would destroy the negotiable quality of the note. The $5,000 is absolutely and certainly payable on the 1st day of March, 1894, with or without the mortgage, unless the maker neglects or refuses to do certain things, and for such cause the holder elects to exercise the option given to him, acts that were known to appellant to have been unperformed at the time she purchased and received the assignment of the note before it was due.

Various definitions have been given of a promissory note. The one given by Mr. Justice Magruder, in Dorsey v. Wolff, 142 Ill. 589, is as clear and comprehensive as any seen by us. It is there defined as "a written promise by one person to pay another person therein named, or order, a fixed sum of money, at all events, and at a time specified therein, or at a time which must certainly arrive." Applying that definition to the note involved in this suit, after reading

into it all the provisions in the mortgage relating to its payment, can it be justly said that it does not fulfill every element of the definition?

It is nothing more nor less than a written promise of the maker to pay another person therein named, or order, a fixed sum of money ($5,000) at all events, and at a time specified therein (March 1, 1894), or at a time which must certainly arrive. Not a single condition or stipulation is contained in the mortgage rendering the note uncertain as to the payment at all events. The time for its payment must certainly arrive, absolutely and at all events. If not called by the holder, by reason of the delinquency and wrong of the maker, before March 1, 1894, then as that time must certainly arrive, it is then due, thus fitting into every requirement of the definition. It was said in Dorsey v. Wolff, *supra:* "The notes are not payable on a contingency, because the maker has the option of paying on or before a certain date." So, in the case presented, the note is not payable on a contingency because the holder has the option, in the event of the delinquency of the maker, to require payment, or in default to foreclose the mortgage before the specified date, for in either event its time of payment is sure to come. In the case of a note payable on or before a given date, at the option of the maker, it is uncertain whether the maker will exercise such option, but the date specified for its payment is sure to come, and hence the court holds that such a note is not payable on a contingency, and is negotiable. So, in the case presented, the note is payable on a given time, subject to the option of the holder to demand it at an earlier time in case the maker is delinquent in certain respects. It is uncertain, like the other case, whether the holder will exercise such option, but it is absolutely certain that the time, March 1, 1894, would arrive and the note is not payable on a contingency, and therefore is negotiable.

And here it may be pertinent to observe that the mortgage only authorizes the option to be exercised by the holder for the purposes of its foreclosure, leaving the note

wholly unabridged by the mortgage in respect to the legal rights and remedies of the parties in a suit at law, such as we are considering.

Much reliance was placed, by counsel for appellee in the argument, upon the decisions of the Supreme Court of Michigan, as affording rules for different construction of the note than the one which it is contended by appellant should be given to it. In Brooke v. Hargreaves, 21 Mich. 254, it was said : "That a note was not negotiable when the criterion of time of payment depended upon the volition of a third party, and it must be payable at a time which must certainly arrive in the future, upon the happening of some event or the completion of some period not depending on the volition of any one;" and counsel insisted upon the application of the rule so declared to the note herein. We can see no substantial distinction in the statement of the rule in Brooke v. Hargreaves, *supra*, and the statement of the rule by our own Supreme Court. Both are in effect the same. The criterion of time in the note here in question does not depend on the volition of a third party, and is payable at a time which must certainly arrive in the future, upon the happening of some event, the conditional option of the holder or the completion of a period not depending on the volition of any one, March 1, 1894. One of the events was inevitable and bound to occur, and it is immaterial that one of them was uncertain or contingent.

In Bird v. Pope, 73 Mich. 483, relied upon by counsel for appellee, the note provided that if it was not paid at maturity, the property for which it was given should belong to the payee, and to the same effect in substance was Bank v. Carson, 69 Mich. 437, cited by counsel. In such cases the effect of the note would be to provide a different method of payment than in money, and all would agree its negotiable quality would, under the law merchant, thereby be destroyed but they have no application under our statute as it existed at the time the note was executed. Other cases are cited and relied upon from different States, which, as we believe, have little or no reference to the question here pre-

sented.   Some of these cases go to the extent of holding that a stipulation contained in the note for attorney fees, and the like, render a note non-negotiable, but, as has been seen, these decisions are not in harmony with the decisions of our own Supreme Court upon similar questions.

In Archer v. Claflin, 31 Ill. 306, it was held that under our statute it need not be expressed in a note to be for value received, nor payable to order, to make it negotiable, nor need it have a date, as delivery gives it effect; and no time being specified (for its payment), it is payable on demand.

As regards the objection to the negotiability of the note here presented, on the ground that its time of payment is uncertain and contingent, can it be justly said that there is certainty of the time of payment of a note in which no time of payment is specified and uncertainty of time in another note in which it is specified that the holder may have the option, contingent on the delinquency of the maker, to demand payment, and the absolute right on a date specified ?

Again, in White v. Smith, 77 Ill. 351, it was held that a written promise to pay a certain sum of money to a railroad company, or order, in such installments and at such times as the directors of the company may from time to time assess or require, is a valid, negotiable, promissory note, being in effect payable on demand.   In that case it was said by the court :

" The principle is undoubted that to constitute a valid promissory note, it must be for the payment of money which will certainly become due one time or other, although it be uncertain when that time will come.   And where the payment depends upon a contingency it will make no difference that the contingency does in fact happen afterward on which the payment is to become absolute, for its character as a promissory note can not depend upon future events, but solely upon its character when created."

And so applying this statement of the law to the case presented the note would, by its character when created, certainly become due one time or other, namely, March 1, 1894,

and was therefore negotiable. In the same case the court say further:

"The instrument in question does seemingly depend for its payment upon a contingency. But there is a class of cases, says Judge Story, which at first view seem to import that payment is to be made only upon the occurrence of events which may never happen, and yet which are uniformly held to be absolutely payable at all events. Thus, if a note be payable at sight, or ten days after sight, or ten days after notice, or on request or on demand, in all these and the like cases the note will be held valid as a promissory note and payable at all events, although in point of fact the payee may die without ever having presented the note for sight, or without having given any notice to or made any request or demand upon the maker for payment. But the law, in all cases of this kind, deems the note to admit a present debt to be due the payee, payable absolutely and at all events, whensoever and by whomsoever the note is presented for payment according to purport." Story on Promissory Notes, Sec. 29.

So in Cisne v. Chidester, 85 Ill. 523, it was held that a note made payable "on the first day of September, 1871, or before, if made out of the sale of J. B. Drake's horse hay fork and hay carrier," was payable, at all events, on the day named, and negotiable.

Having demonstrated, as we think, that the provisions of the mortgage do not introduce into the note such uncertainty as to time of payment that it is thereby rendered non-negotiable, we shall next consider whether they introduce such uncertainty as to amount as will have that effect. The engagement to pay the taxes and assessments on the land added nothing to the obligation of the maker. That obligation rested upon him independently of any stipulation on the subject. The provisions with reference to waste and insurance did not enlarge his obligation as a maker of the note or increase the amount which he had agreed to pay to the holder of it. All those requirements related to the security which had been executed to make the payment of the note certain and could not be regarded as increasing the amount of the note. 2 Jones on Mortgages, Secs. 1137, 1683; Wilson v. Campbell, 110 Mich. 583.

In Kansas and Utah just such cases as the one here presented have been before their Supreme Courts, and in both States it is held that such a note is non-negotiable, but so far as we are able to learn, they stand alone.   They are in conflict with the following well-considered cases :   Chicago Equipment Company v. Merchants National Bank, 136 U. S. 268; Carlon v. Knealy, 12 Mees. & W. 139; Ernst v. Steckman, 74 Pa. St. 13; Walker v. Woolen, 54 Ind. 164; Carlton v. Read, 61 Iowa, 166; Wilson v. Campbell, 110 Mich. 580.

Commercial paper has become of late years such a medium of exchange in the business world that there has been a gradual departure by most of the courts from the old restrictions and expressions which counsel for appellee call to their aid.    With the exception of the Supreme Court of the United States, there is, perhaps, no court in this country in which the disposition to such departure is more manifest than in the Supreme Court of our own State.    Under its decisions neither the provision for an attorney fee in the event of collection by suit, the right in the maker to pay before the date named, nor a power of attorney contained in the note authorizing any attorney of a court of record to confess a judgment upon the note before it is due, will render the instrument non-negotiable.

Aside from a question of negotiability there is another one involved that seems to us of more importance than counsel have seen fit to give it; and that relates to the care exercised by Lucas in ascertaining that the money paid in by him was paid to the proper party.   Did Lucas exercise proper precaution in that regard?

Under what excuse or pretext could the maker of the note assume to pay a part of it before maturity, without taking the precaution to see it and have an indorsement of the payment made upon it, or without knowledge that the person to whom he makes payment owns it?   It is an elementary rule that the debtor must know at his peril that the person to whom he makes payment has authority to receive it, and that he who is negligent in that regard must bear the loss

of his dereliction rather than such consequence shall be visited upon an innocent person. Whether negotiable or not, the note was not due upon any terms of either note or mortgage when Lucas made the payment, and he had no right to assume that Oliver was still the owner of it. Persons of even slight intelligence knew that when securities of this kind are given to brokers, such as the evidence shows Oliver' was, that it is their custom to sell them to others. That is an important part of their business, and persons who desire to make payments on securities which they have executed to them, should exercise some care to ascertain whether they still own them. The letter written by Brinkerhoff and Oliver to Lucas, before the payment was made, would seem to contain sufficient notice ·to a person of common intelligence and ordinary prudence that some one else owned or controlled the note, for by it he was informed that they had made arrangements for him to pay on the Hunter mortgage, in accordance with their understanding, early in the month. If Oliver owned the note then why were any arrangements necessary? If Lucas had ascertained the truth from Brinkerhoff and Oliver he would have known that Oliver did not own the note. In paying to them then he would thereby constitute them as agents, and the loss incident to their failure to pay to the holder would be his and not that of the holder, of course. If the letter contained enough to put him on inquiry as to who did own the note, and he, without making inquiry, saw fit to pay to them, with equal reason should he bear the loss consequent upon their fraudulent appropriation of the money.

Lucas testified that he paid Brinkerhoff and Oliver $100 for the privilege of· making the payment before maturity, and that he did not know whether they had the note in possession when he made the several payments by check, and took no steps to ascertain whether they were credited upon it. It would seem to follow, when all the evidence is considered, that when he paid Brinkerhoff and Oliver the $100 he paid it for their services as brokers, to arrange with the owner of the note for a payment of $3,000 thereon before

its maturity.   Therefore we feel justified in saying that when the entire record is considered, the conclusion is legitimate that Brinkerhoff and Oliver received the $3,000 as the agents of Lucas.

The judgment should have been for $3,000 and the interest thereon.   As a jury was waived in the court below, we shall render judgment in this court for the amount due at the time of filing this opinion, which we find to be $3,945. We therefore order judgment to be entered for that amount in favor of appellant and against appellee and the costs of this court.   Judgment reversed.

**Finding of Facts,** to be incorporated in the judgment. We find that at the time appellant purchased the instrument sued on the same was not due; that no part of the principal had ever then been paid; that the amount of $3,000, remitted by Caleb K. Lucas to Brinkerhoff and Oliver to be applied on the note, was never in fact paid to the holder of the note; that in receiving such remittance Brinkerhoff and Oliver were the agents of Lucas, and that appellant, at the time of receiving the note, had no notice of such remittance. And the court further finds that there is now due appellant upon said note the sum of $3,945.