# THE COMMERCIAL NATIONAL BANK OF CHICAGO

*v.*

# THE CONSUMERS' BREWING COMPANY.

APPELLATE PRACTICE; INTERLOCUTORY ORDERS; SPECIAL
APPEALS; PROMISSORY NOTES; NEGOTIABILITY.

1. An appeal will not lie from a judgment sustaining a demurrer to one of two counts of a declaration, pending the trial of issues made under the remaining count, unless specially allowed by this court.

2. Such a judgment is an interlocutory order within the meaning of the statute authorizing this court in its discretion to allow appeals from such orders whenever it is made to appear that it will be in the interest of justice to allow such appeal.

3. An assignee of a non-negotiable promissory note can not maintain an action at law upon it in his own name, but must sue in the name of his assignor to his use.

4. The negotiability of a promissory note is not impaired (1) by a provision in it that the principal is payable, at the maker's option, before maturity; nor (2) by a mere provision for the pledge of collateral security; nor (3) by a stipulation for the payment of interest monthly or at other stated periods; nor (4) by a stipulation that the maker shall have the right to curtail the principal in instalments of not less than a certain proportion upon the recurring interest periods; nor (5) by a stipulation that the principal shall be paid in such instalments and at such times as the payee may require.

5. While a provision in a promissory note authorizing the sale of collateral security before maturity upon reasonable conditions and conditions determinable with reasonable certainty, may not destroy the negotiability of the note; stipulations will have that effect which authorize a third person to demand additions to the collateral, or the payment of money on account, whenever in the opinion of such third person the collateral shall have depreciated in value, and to sell in case of default, especially where in addition to such stipulations the note provides that the principal shall be curtailed monthly but does not specify in what amount, and while provision is made for the sale of the collateral, no provision is made maturing the principal in case of default of the maker to pay

the interest or the monthly curtailment of the principal or to furnish additional security in event of depreciation of that pledged.

No. 954. Submitted January 17, 1900. Decided March 6, 1900.

HEARING on two appeals by the plaintiff, one a general appeal and the other an appeal specially allowed by this court, from a judgment of the Supreme Court of the District of Columbia, sustaining a demurrer to one of two counts of the declaration in an action on a promissory note. A motion by the appellee to dismiss the general appeal *granted*; a motion to dismiss the special appeal *denied*; and the judgment of the lower court *affirmed*.

The COURT in its opinion stated the case as follows:

Two appeals have been taken in this case from the same judgment, and are presented on a single record. The appellee has moved to dismiss each in turn as not properly taken, and the grounds of those motions must be first considered.

The record shows the following proceedings in the court below. The Commercial National Bank of Chicago filed its declaration July 27, 1899, against the Consumers' Brewing Company of the District of Columbia to recover upon two promissory notes or obligations for the payment of money.

The first count of the declaration sets out the instrument that is in controversy on this appeal as follows:

"$21,850.00.

"WASHINGTON, D. C., June 20th, 1898.

"On or before one year the Consumers' Brewing Co. of Rosslyn, Va., promise to pay to Chas. Kaestner & Co. order, at the Riggs National Bank of Washington, D. C., or order, at said bank, twenty-one thousand eight hundred fifty & no/100 dollars, for value received, with interest at 6 per centum per annum, having deposited with said bank, as collateral security for the payment of this note, the following property, viz., certificates Nos. 324, 392, 304, 204, 205, 206,

207, 208, 209, 210, 211, 212, 213, 214, aggregating two hundred and thirty shares of the capital stock of the Consumers' Brewing Co. of Rosslyn, Va., it being agreed by the makers that the interest on this note shall be paid monthly and that the principal shall also be curtailed monthly, with full power and authority to Chas. Kaestner & Co. or said bank to sell the whole or any part of said security, or any substitutes therefor or any additions thereto, at public or private sale, at any time and at the option of said bank or its assigns, on the non-performance of this promise or any part thereof, and without advertisement or notice to the undersigned; and upon such sale the holder hereof may purchase all or any part of said securities, discharged from any right of redemption. After deducting all proper costs and expenses, the residue of the proceeds of sale shall be applied to the payment of this note, and the undersigned agrees to remain liable for any deficiency then remaining. In case of depreciation in the market value of said security at any time pledged for this loan, a payment shall be made on account or additional security added, as required by said bank. It is agreed that any excess of security upon this note shall be held as security for any other debt due to the said bank by the maker hereof.

"THE CONSUMERS' BREWING CO.,
"By WM. McGUIRE, Pres.;
"By JAS. RICHARDSON, Treas."

[Indorsement on back of note:] "41576. Consumers' Brewing Co. $21,850 & int. 6 % 20 June, '99. Riggs bk. Chas. Kaestner Co."

The second count is on a note for $2,000, bearing the same date and executed by the same parties, which is omitted from the record because the issues concerning it remain undetermined in the court below.

Defendant demurred to the first count on the ground that the instrument therein set forth was not a negotiable note,

and, consequently, that an action could not be maintained thereon in the name of the indorsee.

This was sustained November 28, 1899, "and the plaintiff, electing to stand upon said count, judgment on the demurrer is ordered."

The judgment further recites: " Therefore it is considered that the plaintiff take nothing by its suit contained in the first count of its declaration, and that the defendant go thereof without day as to said count."

Plaintiff noted an appeal and gave the required bond. Being in doubt whether the said judgment was final in the sense that an appeal would lie as matter of right, plaintiff petitioned this court for the allowance of a special appeal as from an interlocutory order, which was duly granted.

Appellee has moved to dismiss both appeals.

*Mr. R. Ross Perry* and *Mr. R. Ross Perry, Jr.,* for the appellant:

1. The note in question was meant to be negotiable. This intention is a material element in determining the character of a written instrument. *White* v. *Railroad Co.,* 21 How. 575.

2. The note in question is negotiable according to the usage and practice of the business community. That such usage and practice may determine the negotiability of a written instrument is well settled. *White* v. *Railroad Co., supra;* *Bank* v. *Bates,* 120 U. S. 556; Thompson on Corp., Sec. 2589; *Kortright* v. *Bank,* 20 Wend. 92; *McNeal* v. *Bank,* 46 N. Y. 331; *Railroad Co.* v. *Schuyler,* 34 N. Y. 41.

3. The following cases illustrate the growth of the principle of negotiability. *Texira* v. *Evans,* cited in *Master* v. *Miller,* 1 Anstr. 228; *Hibblewhite* v. *M'Morine,* 6 M. & W. 200, 216; *United States* v. *Nelson,* 2 Brock. 64. The following results of this growth may be noted: Certain instruments are declared to be practically commercial paper and to be entitled to all immunities attaching to such paper.

Municipal bonds and coupons attached, payable to order and indorsed, or payable to bearer. *Lexington* v. *Butler*, 14 Wall. 282; *School District* v. *Hall*, 113 U. S. 135; *Provident Co.* v. *Mercer Co.*, 170 U. S. 593. Bonds and treasury notes of the United States, payable to holder or to bearer at a definite, future time. *Vermilye* v. *Express Co.*, 21 Wall. 138. Letter of credit relating to bills of exchange. *Agra* v. *Bank*, 2 L. R. Ch. App. 297; *In re Blakely Co.*, 3 L. R. Ch. App. 154; *Arents* v. *Com.*, 18 Gratt. 769. Certificates of deposit by a bank or banker, payable to A, B, or order. *Miller* v. *Austen*, 13 How. 918; 2 Daniel Neg. Inst. (3d Ed.), Sec. 1703. Certain other instruments are declared to be *quasi* negotiable. 2 Daniel Neg. Inst. (3d Ed.), Sec. 1708; *Railroad* v. *Howard*, 7 Wall. 415. County warrants, payable to bearer. *Wall* v. *Munroe Co.*, 103 U. S. 74. Certificates of stock. *Bank* v. *Lanier*, 11 Wall. 369; *Leitch* v. *Wells*, 48 N. Y. 613; *Johnston* v. *Laflin*, 103 U. S. 804. Bills of lading have by statute been made negotiable, but they are subject to defenses, and the law of innocent holder is not applicable to them. *Shaw* v. *Railroad Co.*, 101 U. S. 557, 562.

4. The note in question is a promissory note. A promissory note is an absolute promise in writing, signed, but not sealed, to pay a specified sum at a time therein limited, or on demand, or at sight, to a person therein named, or to his order, or to the bearer. Byles on Bills, 4. Promissory notes "are promises in writing to pay a fixed sum of money to a named person or order, at all events, and at a time which must certainly arrive." *School District* v. *Hall*, 113 U. S. 135; *Railway Co.* v. *Bank*, 136 U. S. 268. Therefore, the test is, as to time, must a time arrive when the note must be paid? As to amount, must a certain sum be paid in any event? In this jurisdiction it is settled that a note payable on or before a certain day is a good promissory note. *Railroad Co.* v. *Bank*, 136 U. S. 268; *School District* v. *Hall*, 113 U. S. 135; 4 Am. & Eng. Encyc. L. (2d Ed.), 92.

The same principle applies necessarily as to amount. If a certain amount must, at all events, be paid, it makes no difference how it is to be paid. Payment in instalments is a mere incident. *Railway Co.* v. *Bank,* 136 U. S. 286, citing with approval *Ricker* v. *Mfg. Co.,* 14 R. I. 402. Notes payable in such instalments and at such times as the directors of the payee, a corporation, shall direct, are payable in effect on demand or in instalments on demand and are good promissory notes. *Gaytes* v. *Hibbard,* 5 Biss. 99; *White* v. *Smith,* 77 Ill. 351; *Turnpike Road* v. *Hurtin,* 9 Johns. 217; *Howland* v. *Edmonds,* 24 N. Y. 307; *Insurance Co.* v. *Miller,* 26 Vt. 77; *Insurance Co.* v. *Bill,* 31 Conn. 534; *Stilwell* v. *Craig,* 58 Mo. 241. To show the extent to which courts have gone in this direction the following authorities are cited: A note payable at or after death is ultimately certain and is a valid promissory note. *Colehan* v. *Cooke,* Willes, 393; *Conn* v. *Thornton,* 46 Ala. 587; *Bristol* v. *Warner,* 19 Conn. 7; 4 Am. Eng. Encyc. L. (2d Ed.), 92, note 2; So of a note payable after peace restored. *Chapman* v. *Wacasar,* 64 N. Car. 532. So of notes payable at a day certain or sooner, if made out of certain sales. *Bank* v. *Crenshaw,* 103 Ala. 497; *Cisne* v. *Chidester,* 85 Ill. 523; *Charlton* v. *Reed,* 61 Iowa, 166; *Walker* v. *Woolen,* 54 Ind. 164; *Ernst* v. *Steckman,* 74 Penna. St. 13. A note payable on or before a day certain, provided the amount is not collected in the meantime from another source, is a good promissory note. *Pemberton* v. *Hoosier,* 1 Kans. 108; *Palmer* v. *Hummer,* 10 Kans. 464; *Gardner* v. *Barger,* 4 Heisk. 668; *Smith* v. *Ellis,* 29 Me. 422.

5. A statement that certain securities have been deposited to provide for the payment of the instrument does not destroy its negotiability. *Wise* v. *Charlton,* 4 Ad. & El. 786; *Fancourt* v. *Thorne,* 9 Q. B. 312; *Haynes* v. *Beckman,* 6 La. Ann. 224; *Mumford* v. *Tolman,* 54 Ill. App. 471; *Knipper* v. *Chase,* 7 Iowa, 145; *Towne* v. *Rice,* 122 Mass. 67; *Perry* v. *Bigelow,* 128 Mass. 129; *Arnold* v. *Railroad Co.,* 5

Duer, 207; *Bank* v. *Crowell*, 148 Penna. St. 284; *Bank* v. *Gary*, 18 S. C. 282; *Dowie* v. *Joyner*, 25 S. C. 123. Nor does the addition of a power of sale in case the instrument be unpaid at maturity, and a provision that the maker shall pay the deficiency, if any, after sale, have that effect. *Knipper* v. *Chase*, 7 Iowa, 145; *Haynes* v. *Beckman*, 6 La. Ann. 224; *Towne* v. *Rice*, 122 Mass. 67; *Perry* v. *Bigelow*, 128 Mass. 129; *Arnold* v. *Railroad Co.*, 5 Duer, 207; *Bank* v. *Crowell*, 148 Penna. St. 284; *Bank* v. *Gary*, 18 S. C. 282. But it has been held in two recent cases that if the security can be sold before the maturity of the note, that circumstance will destroy its negotiability. *Bank* v. *Perry*, 66 Fed. Rep. 887; *Bank* v. *McGeoch*, 73 Wis. 332; 1 Daniel Neg. Inst. (3d Ed.), Sec. 156; *Burke* v. *Dulaney*, 153 U. S. 228. In this District promissory notes secured upon real estate are almost universally employed for the purposes elsewhere accomplished by mortgages. These deeds of trust contain provisions that the collateral real estate security may be sold upon default in payment of interest, of taxes or of insurance. Upon such sale the net proceeds are to be applied to the payment of the principal note whether due or not. If the decision in the case of *Bank* v. *Perry, supra,* is good law, the negotiability of this great mass of paper is destroyed. The decision in *Bank* v. *Perry, supra,* that if the security can be sold before maturity of the note, that circumstance destroys its negotiability, is based upon the erroneous idea that the principal sum of a note can not be so anticipated in payment as to prevent the sum for which it was originally given being payable at its maturity; a doctrine inconsistent with that of the Supreme Court of the United States. Opposed to this decision is that of *Mumford* v. *Tolman*, 54 Ill. App. 471, which involved the exact point in question. See, also, *Goschen* v. *Turnpike Co.*, 9 John. 217; *Bank* v. *Crenshaw*, 103 Ala. 497.

*Mr. Lorenzo A. Bailey* and *Mr. Andrew A. Lipscomb* for the appellee:

1. The judgment was not a final judgment, within the meaning of section 7 of the act establishing this court; was not appealable; and this court is without jurisdiction to review, affirm, reverse, or modify the same upon the general appeal. That appeal should therefore be dismissed. *Holcombe* v. *McKusick*, 20 How. 552; 11 How. 22; 106 U. S. 3; 148 U. S. 264; 21 Wend. 667.

A judgment, to be final and appealable, must terminate the litigation between the parties on the merits of the case. 7 Am. & Eng. Encyc. of L. 967; 2 Encyc. Pl. & Pr. 53, 54; 43 W. Va. 43.

2. The objection to the maintenance of the special appeal also goes to the jurisdiction of the court. It is clearly not an interlocutory order, but was final as to the first count. The special appeal should therefore be dismissed. *Kimball* v. *Evans*, 93 U. S. 320; *Parson* v. *Parker*, 3 MacA. 9; 2 Poe Pl. & Pr., Sec. 360; 1 Id., Sec. 710; *Riley* v. *Jarvis*, 43 W. Va. 43.

3. If this court has jurisdiction of the case, the judgment should be affirmed. The instrument sued on in the first count contains a promise to pay on or before one year, and to curtail the principal monthly, and also a promise, in case the stock pledged as security shall depreciate in value, to make a payment on account, or add additional security, as Riggs bank may require. Each of these promises is a part of the contract. *Bank* v. *Perry*, 66 Fed. Rep. 887; *Costelo* v. *Crowell*, 127 Mass. 293; *Killam* v. *Schœps*, 26 Kan. 310. The maker's liability on this instrument is uncertain in several respects, viz: (1) As to the time when he must pay an instalment on it, and (2) as to the amount of each instalment, and (3) as to the amount, if any, which shall be due at the expiration of the year. Such an instrument is not negotiable. *Bank* v. *Perry*, 66 Fed. Rep. 887. Any contingency either as to the amount to be paid, or as to the time when payment is to occur, robs the paper of that certainty which is one of the chief essentials of negotiability. *Chouteau*

v. *Allen*, 70 Mo. 290; *Hubbard* v. *Mosely*, 11 Gray, 170; *Way* v. *Smith*, 111 Mass. 523; *Stults* v. *Silva*, 119 Mass. 137; *Mahoney* v. *Fitzpatrick*, 133 Mass. 151; *Bank* v. *McGooch*, 73 Wis. 332; *Bank* v. *Bynum*, 84 N. C. 24; *Smith* v. *Marland*, 59 Iowa, 645; *Cook* v. *Satterlee*, 6 Cowen, 108; *Russell* v. *Russell*, 1 MacA. 263; *Smilee* v. *Stevens*, 39 Vt. 316; *Nunez* v. *Dautel*, 19 Wall. 560; 1 Rand. Com. Paper, Sec. 110, p. 148 and note 2; 1 Dan. Neg. Instr., Sec. 45*a*.

4. Whether the instrument be negotiable or not is a question of law, and not of fact. The instrument was issued complete, is unambiguous, and no question of intention can arise. The character of the instrument, whether negotiable or not, depends upon its terms, and not upon the intent of the parties or either of them.

5. A promissory note is "an unconditional promise to pay to another's order or to bearer a specified sum of money at a specified time." Tied. Com. Pap., Sec. 6. This definition indicates the test. The time must be specified; the sum to be paid at that time must be specified, and the promise to pay the specified sum at the specified time must be unconditional. In the case at bar we find uncertainty in all these respects. The decisions opposed to the well-established requirements of certainty in commercial paper, cited by counsel for the appellant as emanating from the "progressive school," are not controlling here. Recent decisions are sustaining the rule requiring such certainty, as appears in the following list of cases denying negotiability, viz: Because of provisions maturing a note secured by mortgage on failure of maker to pay taxes and assessments. *Wistrand* v. *Parker*, 7 Kans. 562; *Brooke* v. *Struthers*, 68 N. W. 272. With exchange. 18 Ind. App. 30; Id. 122; *Bank* v. *Slette*, 69 N. W. 1148; *Culbertson* v. *Nelson*, 93 Iowa, 187; 38 Fed. Rep. 283; 28 Fed. Rep. 865; 10 Mo. App. 527. Where bank book of depositor must accompany order. *White* v. *Cushing*, 88 Me. 339. With costs and attorney's fees. 67 Mo. App. 150; 86 Mich. 191; 48 S. C. 308; 91 Me.

406; 60 Md. 584. Where paper showed on its face that the consideration was an executory contract. 171 Penna. 615. Holder may, before or after maturity, extend time of payment. 39 Fed. Rep. 262. That note will be renewed at maturity. 126 Penna. St. 194. Payee may declare note due before maturity if he deem it insecure. 28 S. C. 504; 84 N. C. 24.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. It is quite clear that one of these appeals should be dismissed, and equally clear, notwithstanding the ingenious argument on behalf of the appellee, that one must stand.

The only difficulty lies in making the selection between them.

The argument made on the motion to dismiss the general appeal, supported as it is by pertinent decisions of the Supreme Court of the United States, seems to us to lead to a sound conclusion, and our judgment is that that appeal should be dismissed.

Notwithstanding the judgment was a disposition of the subject matter of the first count, the case, of which that count forms a part only, has not been decided. It is depending upon the issues made by and under the remaining count.

In the language of Chief Justice Waite in a case that bears some, though not direct, analogy: "It disposed finally of one of the questions involved in the suit, but not of the suit itself." *Kimball* v. *Evans*, 93 U. S. 320.

It seems reasonably clear from the other decisions of that court that this was not such a final judgment as would sustain a writ of error. *Holcombe* v. *McKusick*, 20 How. 552, 555; *United States* v. *Girault*, 11 How. 22, 32; *McGourkey* v. *Toledo & Ohio R.R. Co.*, 146 U. S. 536, 544; *Luxton* v. *North River Bridge Co.*, 147 U. S. 337, 341; *Hohorst* v. *Hamburg-American Packet Co.*, 148 U. S. 262, 264; *McLish* v. *Roff*, 141 U. S. 661, 665.

In the first case cited above, Mr. Justice Nelson said: "It

is the settled practice of this court, and the same in the
King's Bench in England, that the writ will not lie until
the whole of the matters in controversy in the suit below
are disposed of. The writ itself is conditional, and does
not authorize the court below to send up the case, unless all
the matters between the parties to the record have been
determined. The case is not to be sent up in fragments."

The finality of form claimed for the judgment is not
decisive. It carries no costs and awards no process as is
usual in the case of final judgments.

The remaining proceedings to be had in the case, prelim-
inary to complete final adjudication, are not mere incidents
of the judgment as rendered, and there is nothing in the
terms of that judgment that requires immediate stay to
prevent injury to the plaintiff; hence the right to appeal
therefrom can not be brought within the principle of *Forgay*
v. *Conrad*, 6 How. 201, 204; *Farmers' Loan and Trust Com-
pany, Petitioner*, 129 U. S. 206, 213, and other cases of similar
purport.

The plaintiff might have made the judgment final by
dismissing the remaining counts of its declaration at the
same time, but this was its privilege only. It took no such
course; consequently the action with only one of its branches
affected—the case itself—remains undisposed of in the court
below.

2. Having succeeded in establishing the proposition that
the judgment is not final in the sense that an appeal lies
therefrom as a matter of course, the appellee, on its motion
to dismiss the special appeal, propounds the subtle conten-
tion that it is, nevertheless, so far final in its nature as not
to be a mere interlocutory order within the meaning of the
act creating this court and defining its appellate jurisdiction.

The seventh section of that act, after granting the right
of appeal from all final orders, judgments and decrees of
the Supreme Court of the District of Columbia, provides
that:

"Appeals shall also be allowed to the Court of Appeals from all interlocutory orders of the Supreme Court of the District of Columbia, or by any justice thereof, whereby the possession of property is changed or affected, such as orders for the appointment of receivers, granting injunctions, dissolving writs of attachment and the like; and also from any other interlocutory order, in the discretion of said Court of Appeals, whenever it is made to appear to said court upon petition that it will be in the interest of justice to allow such appeal."

This section is not capable of a construction that would limit the power of the court to allow appeals to mere interlocutory orders that have no apparent element of finality in respect of some branch or issue of the case therein involved. We attach no significance to the fact that "interlocutory orders" are mentioned without the additional words, "judgments or decrees."

There are but two kinds of orders, judgments or decrees in the nomenclature of our procedure, namely, interlocutory and final. The object of this statute was to make a substantial addition to former privileges of appeal that were confined to final orders, judgments and decrees of the character hereinabove described.

To provide additional appeals, the necessity of which experience has demonstrated, and at the same time to prevent the evils that would attend upon an unrestricted right of appeal from all interlocutory orders, these were divided into two classes.

From those of the first class, which are specially enumerated, appeals lie as in the case of final orders.

From those of the second class, appeals can only be had upon the allowance of the appellate court. All orders made in a case, therefore, which are not final—using that word in its technical sense—or which do not come within the enumeration of the second class, necessarily fall within the third. This judgment or order is not final, as we have before

determined; it is clearly not an order of the second class; consequently it is an interlocutory order of the third class.

The appeal having been allowed, and brought up as allowed, must be entertained. The motion to dismiss is overruled.

3. The question raised and determined on the demurrer in respect of the negotiability of the instrument hereinabove set out, is the right of the appellant to maintain this action in its own name as holder by regular indorsement. If it be not an instrument negotiable by the law merchant, an action upon it in this District by an assignee can only be maintained at law in the name of the payee and assignor to the use of the assignee. *Glenn* v. *Marbury*, 145 U. S. 499, 509; *Hayward* v. *Andrews*, 106 U. S. 672.

The instrument is made lengthy by the incorporation of a collateral agreement containing many stipulations, some of which are vague and difficult to apprehend, owing doubtless to the effort of an unskilled hand to adapt to the payees' purposes a blank form intended for the use of the Riggs National Bank, which is the designated place of payment.

Before taking up the particular stipulations of this collateral agreement, to which the argument has been chiefly directed, we think their elucidation may be aided to some extent by first considering the general features of the paper in connection with principles applicable to them, that seem well established.

The beginning clause—the note proper—which contains the essential promise to pay a certain sum of money, to a certain person or order, on or before a certain date, exhibits all the necessary elements of technical negotiable paper; for it is settled in this jurisdiction that negotiability is not affected by the fact that the principal may be payable, at the option of the maker, before the date of certain maturity. *Ackley School District* v. *Hall*, 113 U. S. 135, 140; *Chicago Railway Equipment Co.* v. *Merchants' Bank*, 136 U. S. 268, 284; *Bowie* v. *Hume*, 13 App. D. C. 286, 311.

Again, negotiability is not impaired by the provision that immediately follows the first clause, in so far as its mere pledge of certain shares of stock as collateral security is concerned.

Promissory notes embodying collateral agreements of pledge, or the usual short forms of chattel mortgage with or without power of sale upon default, are quite common in commercial dealings, and there is general agreement of authority that their negotiability is not affected thereby, provided that, in other respects, they satisfy the requirements of the law merchant. *Chicago Railway Equipment Co.* v. *Merchants' Bank,* 136 U. S. 268, 283; *Lincoln National Bank* v. *Perry,* 66 Fed. Rep. 887, 893, and authorities cited.

Agreement is apparently universal, also, that stipulations for the payment of interest at stated periods, before the maturity of the principal, do not impair negotiability; and whether those periods recur monthly, as in this instrument, or less frequently, as is usual, can of course, make no difference.

It seems well settled, too, that stipulations, like the following, are not inconsistent with the requisite certainty of negotiable paper, namely: That the maker shall have the right to curtail the principal in instalments of not less than a certain proportion upon the recurring interest paying periods. *Ricker* v. *Sprague Mfg. Co.,* 14 R. I. 402. That the principal shall be paid in such instalments and at such times as the directors of the payee corporation may require. *White* v. *Smith,* 77 Ill. 351.

Both of the foregoing cases are cited in, and are within the reasoning of, the opinion of the Supreme Court of the United States in *Chicago Railway Equipment Co.* v. *Merchants' Bank,* 136 U. S. 286, which decides, also, that a stipulation is not objectionable which, upon the failure to pay the principal of the first and succeeding notes of a series at maturity, shall mature them all.

Coming now to the special provisions of the collateral

agreement that furnish the chief ground of contention
between the parties, notice is first called to that which
authorizes the sale of the collateral stocks, deposited with
the Riggs bank, by the payee or the said bank, "on the
non-performance of this promise or any part thereof." The
precedent parts of this promise are, the payment of the prin-
cipal on or before a certain day, with interest payable
monthly, and a monthly curtail of the principal. A sub-
sequent part of the promise is, that "in case of depreciation
in the market value of said security at any time pledged
for this loan, a payment shall be made on account, or addi-
tional security added as required by said bank."

It will be observed that there is no condition that default
in the payment of the monthly interest shall mature the
principal. If there were, the stipulation for the sale of the
collateral thereafter would be wholly unobjectionable. Nor
is there any stipulation maturing the principal upon failure
of the monthly curtailment, or failure to furnish additional
collateral security in case of the depreciation in the value of
that pledged.

Laying aside, for the time being, the effect claimed for
all of the special provisions taken together, the broad propo-
sition is submitted that any stipulation for the sale of col-
lateral, before the maturity of the note, takes away the
necessary certainty of payment and destroys negotiability.
This proposition is supported by persuasive argument and
weighty authority. *Lincoln National Bank* v. *Perry*, 66 Fed.
Rep. 887, 893; *Bank* v. *Wells*, 73 Wis. 332.

In the first of those cases the stipulation relating to the
sale of the collateral was substantially the same as in this
case, though artificially drawn and free from other compli-
cations. In delivering the opinion of the Circuit Court of
Appeals of the Eighth Circuit in that case, Judge Thayer
said: "It is manifest, however, that an important element
of certainty is destroyed by a collateral agreement appended
to a note which may cause a payment to be made thereon
of an uncertain sum at an uncertain time before maturity,

and thus render the amount payable at maturity somewhat less than the amount specified on the face of the paper. A note of that description, which carries with it the probability, or even the possibility, that it may be partially or wholly extinguished before maturity, differs essentially from bank bills and other forms of currency which negotiable paper is supposed to resemble, and whose functions it is intended to perform." After discussing several cases, he said further:

" We are forced to concur in the view taken by these cases—that the negotiability of a promissory note ought not to be upheld when it contains an agreement authorizing the holder in a certain contingency to demand such further collateral security as he deems satisfactory, and if it is not furnished, to sell the original collateral and to apply the proceeds in payment of the paper before it has become due. Under existing conditions permitting negotiable notes to contain a stipulation authorizing the sale at maturity of collateral securities, and, in some States, authorizing the insertion of an agreement to pay exchange and attorneys' fees, as well as a warrant to confess judgment, such instruments have already been burdened with all the luggage which they can conveniently carry. Furthermore, as notes and bills are designed to circulate freely, and to take the place of money in commercial transactions, sound policy would seem to dictate that they should be in form as concise as possible, and that the obligation assumed by the maker or makers should be expressed in plain and simple language. It is easy to foresee, that, if parties are permitted to burden negotiable notes with all sorts of collateral engagements, they will frequently be used for the purpose of entrapping the inexperienced and the unwary into agreements which they had no intention of making, against which the law will afford them no redress."

It must be admitted that, as suggested by Judge Thayer, the tendency of modern business and custom of merchants has been, from time to time, to interpolate additional col-

lateral promises and conditions into the simple negotiable note that was created by this same custom, in a past age. And under such influences, the simple, short instruments of early custom have grown into elaborate documents full of collateral undertakings of every nature that the development of modern business and systems of credits could suggest.

It is equally true, also, that many of these additions so clearly demonstrated their merits as beneficial aids to credit and commerce, that they met with immediate and general approval by enlightened courts.

In respect of a number of these later innovations, the American courts have been much divided in opinion, and it is impossible to reconcile their decisions.

Some have been restrained by the spirit of conservatism and fear of injury to the inexperienced and unwary that is indicated in the opinion quoted from above, and manifest a decided inclination to return to the simple forms of negotiable bill and note that so closely resembled the bank bill and other forms of currency, and to supplement which, as agencies of commerce, they were invented.

Others, again, have shown a progressive disposition in the recognition of this continued growth, on all fours with the spirit of commercial progress that has developed and promoted it.

That the Supreme Court of the United States has shown no disposition to thwart the reasonable expansion of the scope of negotiable paper through the incorporation of collateral undertakings, suggested by new conditions of business and adopted by general custom, is apparent from its latest decision, that has been heretofore cited. *Chicago Railway Equipment Co.* v. *Merchants' Bank*, 136 U. S. 268. It has not gone the length, however, of sustaining stipulations of a collateral agreement like that under consideration in this case.

In view of the trend of authorities cited, as well as the

course of reasoning followed in that opinion, we should, to say the least, gravely doubt the propriety of following the doctrine of *Lincoln National Bank* v. *Perry, supra,* if the single question here involved was in respect of the uncertainty raised by a stipulation authorizing the sale of collateral security before the day of absolute maturity, upon conditions reasonable in their nature and determinable with reasonable certainty.

The requirement that the proceeds of such a sale shall be at once applied to the principal, the deficit, if any, remaining due as before, has the effect to mature the principal *pro tanto* at that time. And that the proceeds of such sale might cause the payment "of an uncertain sum at an uncertain time before maturity, and thus render the amount payable at maturity somewhat less than the amount payable on the face of the paper," is nothing more than the result that would follow the exercise of the option given to the maker to pay the principal in instalments of his own choice, at fixed periods before final maturity, which we have seen would not impair negotiability by importing an element of too great uncertainty.

The same uncertainty, and to a greater degree, inheres in those notes which stipulate for the payment of the principal before ultimate maturity, in such instalments and at such times as shall be demanded by the payee; yet their negotiability has generally been upheld. *White* v. *Smith,* 77 Ill. 351; 4 Am. & Eng. Encyc. L. 90, and cases cited.

Upon the admitted foundation that a provision for sale after maturity is unobjectionable, counsel for the appellant argue that the amount that will remain to be paid after deducting its proceeds is equally as uncertain as would follow a sale before maturity. This is true; but it does not follow that the effect of this uncertainty ought to be the same in both instances.

One condition operates while the bill has negotiable privilege and value; the other after that value has ceased, and

the instrument has become,. for substantial purposes, no better than an ordinary contract for the payment of money, and subject to all the equities arising on behalf of the maker.

However, the particular stipulations of the instrument under consideration do not present the distinct proposition suggested above as possibly differentiating the case at bar from that of *Lincoln National Bank* v. *Perry*. One of these authorizes the Riggs National Bank, a third person, to demand additions to that collateral, or the payment of money on account, whenever in its opinion the said collateral shall have depreciated in value, and to sell the same in case of default.

This raises the very question decided in *Bank* v. *Perry*, and we concur in the conclusion therein reached, without adopting all of the reasoning of the opinion.

The power here conferred is so uncontrolled and uncertain, and its exercise so completely subject to the contingencies of every passing hour from and after the very moment of execution and delivery, that, in our opinion, it constitutes an innovation in the conditions of negotiable paper that ought not to be sanctioned.

The same conclusion had been enounced by the Supreme Court of Wisconsin, before the decision in *Bank* v. *Perry*. *Bank* v. *Wells*, 73 Wis. 332. And the doctrine of the following well-considered cases is closely analogous. *Smith* v. *Marland*, 59 Iowa, 645; *First National Bank* v. *Carson*, 60 Mich. 432, 437; *W. W. Kimball Co.* v. *Mellon*, 80 Wis. 134. In each of those cases there was a short form of chattel mortgage with power to take possession and sell before maturity of the note, in case the payees should deem themselves insecure, or in the event that the makers should attempt to sell or remove the property.

On the other hand, we find no decision to the contrary. The case of *Mumford* v. *Tolman*, 54 Ill. App. 471, is not in point. It is true that the stipulation of the note therein involved authorized the sale of the collateral "on the

maturity of this note, or at any time thereafter or before;" but it is apparent that the word "before" is without any significance, because there is no condition named that would bring it into operation.  This was evidently the view taken by counsel and court, for the point is not even alluded to in the opinion, which is devoted to the discussion of the stipulation providing for the recovery of attorneys' fees in case of judgment, and authorizing the confession of judgment.

In another case the stipulation regarding sale of collateral is substantially the same as in the case at bar; but no point was made on it, and it passed unnoticed so far as the opinion discloses.  *Heard* v. *Dubuque Co. Bank,* 8 Neb. 10.

The contention that the validity of the stipulation, as a part of a negotiable note, is a logical deduction from the decision of the Supreme Court in *Chicago Railway Equipment Co.* v. *Merchants' Bank,* 136 U. S. 268, is plausible, but not satisfactory.

The law of negotiable paper, growing out of usage, is in many instances purely arbitrary; and many of the forms of its growth are not logically deducible.  If this were not true its development could not have been attended with such variety and irreconcilable conflict of decided cases.

Now, notwithstanding the advisability of giving judicial sanction to the reasonable expansion of negotiable paper that may be brought about by the usage and custom of merchants, there must, at last, be some limit—arbitrary, if you please—to the number and character of these super-added collateral promises and conditions, else the line of division demanded by sound public policy between this class of paper and the great mass of ordinary contracts calling for the payment of money will soon be obliterated.

There are some other features of this collateral agreement that add to the uncertainty of the note and strengthen the reasons for its exclusion from the pale of negotiability. They will be briefly mentioned.

The provision for the monthly curtail of the principal constitutes a part of the promise for failure of which the

collateral may at once be sold. There is no other penalty. But what the amount of this curtail shall be, or who or what shall determine its proportion, is left to conjecture. Notwithstanding, then, the maker might perform all other parts of the agreement to the letter, and the security might remain of undepreciated value, that security might nevertheless be sold without notice, because a curtail, satisfactory to the holder or the bank had not been made. In case of disagreement on this point, there is nothing in the agreement by which it could be certainly determined.

Again, the agreement introduces an independent third person—the Riggs National Bank—into the contract. This third person is the custodian of the collateral, and upon it alone, by implication, is devolved the duty of deciding when there has been depreciation in its value, and what additional security, or what amounts of money in lieu thereof, shall be delivered. Moreover, the bank is also made a beneficiary of the deposited collateral by the final clause which declares " that any excess of security upon this note shall be held as security for any other debt due to the said bank by the maker hereof."

This clause is probably due to the inartificial adaptation of the blank form of the bank, to the use of the appellant; but it is nevertheless a part of the agreement. We would not be warranted in saying that the mention of the name of the bank is a clerical error, or in rejecting the stipulation as meaningless. The bank, as we have seen, is not here, for the first time, mentioned. In addition to being made the special depository of the collateral, it is otherwise charged with duties as a *quasi* special trustee, not only to execute the power of sale, but also to determine the value of the collateral and the times and amounts of additions thereto required.

We have found no error in the order sustaining the demurrer, and it will therefore be affirmed with costs, and the cause will be remanded for further proceedings. It is so ordered.            *Affirmed.*