MAMIE M. WEBSTER v. 759 RIVERSIDE AVENUE, INC., et al.

151 So. 276.
Division A.
Opinion Filed November 25, 1933.

*Axtell & Rinehart,* for Appellant.

*Long & Kelly* and *Newcomb Barrs,* for Appellees.

ELLIS, J.—A corporation known as 759 Riverside Avenue, Inc., was authorized when incorporated in January, 1927, to have outstanding five hundred shares of common stock of the par value of one hundred dollars. Three hundred and seventy-five shares of the stock were issued.

In October, 1927, the corporation was indebted to Mamie M. Webster in the sum of $10,500.00 evidenced by its promissory note dated October 21, 1927, payable to the order of Mamie M. Webster three years after date with interest at 8 per cent per annum. The interest payments to become due were evidenced by coupons in the sum of $210.00 each. To secure the payment of the debt evidenced by the note and coupons the corporation executed and delivered to Mamie M. Webster a mortgage upon certain land in the City of Jacksonville. The mortgage contained covenants to

pay the debt evidenced by the note and coupons as they became due respectively and that if the said sums of money should not be promptly paid within thirty days after they became due and payable the aggregate sum mentioned in the note should become due and payable forthwith at the option of the mortgagee.

The corporation did not pay the quarterly interest due on April 21, 1928, nor did it pay the same within thirty days thereafter. The mortgagee, after notice declaring the aggregate sum due under the covenants of the mortgage, brought an action against the corporation and obtained judgment in the sum of $12,933.20. Execution was issued and levied upon the property mortgaged. The mortgagee became the purchaser of the property for $100.00. The judgment was obtained March 11, 1930.

John L. Marvin was a director of the corporation. On the date the mortgage was executed Marvin and the other two directors agreed to obtain a loan for the corporation in the sum of $14,000.00 and to give to Marvin as a bonus for obtaining the loan capital stock of the corporation of the par value of $12,500.00. Marvin made the loan which was evidenced by the corporation's note to him and that was secured by a mortgage upon the land. Certificates of the capital stock of the corporation were delivered to Marvin in accordance with the agreement. Capital stock of the par value of $3,000.00 was issued directly to Marvin, and capital stock of the par value of $9,500.00 was issued to Newcomb Barrs for services rendered.

Barrs immediately transferred the same to Marvin to be transferred on the books of the corporation. A new certificate was then issued to Marvin showing that he owned ninety-five shares of the capital stock. The corporation did not owe any debt to Barrs for services and he had never

made any claim in regard to it. The transaction was understood by the parties to be merely the carrying out of the agreement whereby Marvin should receive $12,500.00 as a bonus for obtaining the loan. When the stock was issued, Barrs was president of the corporation. The transaction assumed that phase merely to carry out the agreement under which Marvin should have the bonus but to superficially show a consideration for the certificates issued to Barrs. No call has ever been made by the corporation on Marvin on account of the 125 shares of stock issued to him.

The above facts were alleged elaborately in a bill by Mamie M. Webster against the Corporation and John L. Marvin in which the complainant asserted that Marvin was "liable to pay to the complainant, as a creditor" of the corporation the sum of $12,500.00 with interest from October 21, 1927, on account of the 125 shares of stock issued to Marvin. The bill alleged that the corporation is insolvent.

The bill prayed that an account be taken of the amount due by the corporation to complainant, what amount of capital stock was acquired by Marvin as a bonus for making the loan and that a decree that the amount so ascertained as the par value of the Marvin stock or so much thereof as may be necessary to pay the complainant's claim shall be paid to her by Marvin.

The defendants moved to dismiss the bill on the ground that there was no equity in it; that it affirmatively appears that the original indebtedness for which the complainant seeks to hold Marvin liable as a stockholder of the corporation was not payable within two years from the time it was contracted by the corporation; that it affirmatively appears that the original indebtedness due to complainant "consists of a note and mortgage made by the" corporation in October, 1927, and was due and payable three years after date

and that Marvin is not liable under the laws of Florida for the indebtedness as a stockholder of the corporation.

On November 3, 1931, the court made an order granting the motion to dismiss the bill and dismissed the same at the complainant's cost. From that order the complainant appealed.

The questions of law involved as stated in appellant's brief are, first, was "complainant's debt payable within two years from the time it was contracted," and, secondly, if Marvin as a stockholder is not personally liable to complainant under Section 14 as limited by Section 16 of Chapter 10096, Laws of 1925, do not the allegations of the bill entitle complainant to have the agreement between the corporation and Marvin "that he shall not pay for said stock" annulled as a fraud upon complainant and the unpaid subscription declared as an asset of the corporation and such asset subjected to the payment of complainant's judgment.

The corporation was organized in January, 1927. Chapter 10096, Acts of 1925, Sections 14 and 16 of that Act are as follows:

"Sec. 14. *Stockholders' Liability.* — Every holder of shares of stock not fully paid shall be personally liable to the creditors of the corporation for debts of the corporation to an amount equal to the amount unpaid on the shares held by him.

"Sec. 16. *Limitation of Action.* — No action shall be brought against the stockholders for any debt of the corporation until judgment therefor is recovered against the corporation and an execution thereon has been returned unsatisfied in whole or in part. Provided, it shall not be necessary to secure judgment against a corporation in the hands of a receiver, or which shall have been adjudged bankrupt. No stockholder shall be personally liable for any

debt of the corporation not payable within two years from the time it is contracted, nor unless an action for its collection shall be brought against the corporation within two years after the ·debt becomes due; and no action shall be brought against the stockholder after he shall cease to be the owner of the shares; for any debt of the corporation, unless brought within two years from the time he shall have ceased to be a stockholder."

The debt when contracted as evidenced by the promissory note was payable three years after date, but interest thereon was payable quarter-annually according to the tenor of the coupon notes. The note recited that the note and interest were secured by a mortgage on real estate.

The mortgage contained an acceleration covenant under which if any of said sums of money be not promptly paid within thirty days after the same became due and payable the "said aggregate sum mentioned in said promissory note shall become due and payable forthwith or thereafter at the option of the mortgagee" and as "full and completely as if the said aggregate. sum of Ten Thousand five hundred dollars was originally stipulated to be paid on such day, anything in said promissory. note or herein to the contrary notwithstanding."

The defendant did not pay the quarterly interest due and payable .on the 21st day of April, 1928, and did not pay the same within thirty days thereafter, so prior to March 30, 1929, a little more than a year and five months after the date of the note and six months and twenty-one days before the expiration of two years from the date of the note, the complainant exercised her option to declare the aggregate sum mentioned in the note forthwith and immediately to be due and payable of which fact she apprised the corporation.

The complainant brought her action upon the covenants

contained in the mortgage on February 20, 1930, one year and twenty days after exercising her option to declare the entire sum to be due and payable, but two years and two months approximately after the date of the note. Was the debt in such case payable within two years from the time it was contracted?

The word "payable" is an adjective and means "that which may, can or should be paid; justly due." It also means "matured or maturing, due." Webster's International Dictionary. The word has been defined by this Court as used in the Constitution as " 'capable of being paid; suitable to be paid; admitting or demanding payment; justly due; legally enforceable.' " In re: Advisory Opinion to Governor, 74 Fla. 250, text 254, 77 South. Rep. 102; 6 Words and Phrases 5245.

A note and a mortgage referred to in the note which are executed at the same time and in the same transaction should be construed together as to provisions in one of the instruments explaining or affecting the provisions of the other as between the parties and persons affected with notice. A provision in a mortgage accelerating the maturity date of notes in case of default in payment of any part of the amount due permits the mortgagee's recovery on the notes independently of the mortgage after default in the payment of one note, where note and mortgage are treated as a single contract. Mr. Justice BUFORD, speaking for the Court, said: "it is clear that the contracting parties intended by this stipulation to provide that the aggregate amount of the three notes should become due and payable at the option of the holder thereof in the event that any one of said notes or the interest thereon should remain unpaid for a period of thirty days after the same became due and payable under the terms and conditions expressed in such note."

See Spadaro v. Baird, 97 Fla. 50, text 57, 119 South. Rep. 788. See also Taylor v. Am. Nat. Bank of Pensacola, 63 Fla. 631, 57 South. Rep. 678.

In the latter case the Court construed Sections 2985 and 2989, General Statutes, 1906, relating to the rights of holders of negotiable instruments and notice of infirmity in the instrument. The Court held that where a note contained an acceleration clause and the holder in his bill of complaint alleged that when it purchased the note, which was before maturity of the principal of the note, that complainant had no knowledge that there had been any default in payment of interest, the fact that no payments of interest were indorsed on the note and the accompanying mortgage did not make the note dishonored, the complainant was a holder in due course.

The fact that a note may become due earlier by reason of default in payment of interest than the date fixed for maturity of the note does not destroy its negotiability as held in Chicago Railway Equipment Co. v. Merchants National Bank, 136 U. S. 268, 34 L. Ed. 349, 10 Sup. Ct. Rep. 999. It does not follow that the happening of the default does not make it payable before the date fixed in the note as the date of maturity.

The statute provides that no stockholder shall be personally liable for any debt of the corporation "not payable within two years." The default is not a contingency. It depends on the act of the maker himself and on his default it becomes a promissory note for the whole amount. Carlon v. Kenealy, 12 Mess. & W. 139.

By default the corporation itself made the note to become due within two years from the time the debt was contracted. As Judge PARKE said in Carlon v. Kenealy, *supra,* the default was not a contingency affecting the negotiability of

the note but by the maker's own act, his default, he makes the note to become due. The language of the covenant in the mortgage referred to in this case is that on default "said aggregate sum mentioned in said promissory note shall become due and payable forthwith or thereafter at the option of the mortgagee, her heirs, legal representatives or assigns, as fully and completely as if the said aggregate sum of $10,500.00 was *originally stipulated* to be *paid* on such day, anything in said promissory note or herein to the contrary notwithstanding." (Italics mine.)

The able counsel for the appellees contends that the above doctrine is not sound and in his brief cites many cases from the State of New York. We, however, do not agree to the reasoning of that Court in discussing a similar statute as applicable to banks. It states that the policy of the statute was to confine the statutory liability to a limited class of indebtedness, namely those payable within two years for one reason at least, so that the liability of stockholders might not be indefinitely postponed. If the debt became due on account of some contingency uncertain as to the date of its happening the rule may apply, but default in the payment of a note and express promise that it shall become immediately due is not a contingency. It is, as said, the act of the maker of the note who thus makes it payable, due and collectable on his default, and if that happens within two years from the date the contract was made the statute becomes applicable as to the liability of the stockholders of the defaulting corporation.

There is nothing in this view, nor in this opinion, to contravene the doctrine announced in Gray v. Standard Dredging Co., 111 Fla. 149, 149 South. Rep. 733, holding that where a statute was adopted from another State, decisions of final appellate court of such State construing the

statute were binding upon Florida Courts and were adopted with the passage of the Act.

In this view of the case the motion to dismiss was erroneously sustained. It is unnecessary to discuss the remaining points.

Order reversed.

DAVIS, C. J., and WHITFIELD, TERRELL and BUFORD, J. J., concur.

BROWN, J., dissents.